[No. D037812. Fourth Dist., Div. One. May 23, 2002.]

SAN DIEGO POLICE OFFICERS ASSOCIATION, Plaintiff and
Respondent, v.
CITY OF SAN DIEGO et al., Defendants and Appellants;
DAVID BEJARANO, Real Party in Interest and Respondent.

COUNSEL

Casey Gwinn, City Attorney, Anita M. Noone, Assistant City Attorney, and David Brodie, Deputy City Attorney, for Defendants and Appellants.

Law Offices of Everett L. Bobbitt, Everett L. Bobbitt and Bradley M. Fields for Plaintiff and Respondent.

No appearance for Real Party in Interest and Respondent.

OPINION

McDONALD, J.—The Public Safety Officers Procedural Bill of Rights Act (Gov. Code, § 3300 et seq., hereafter the Act)[1] provides a public safety officer with numerous protections when the officer is under disciplinary investigation and is interrogated in response to a complaint lodged against the officer. Among other protections, section 3303, subdivision (g) provides the officer the right to receive copies of "any reports or complaints made by investigators or other persons, except those [that] are deemed by the investigating agency to be confidential." In this action, respondent San Diego Police Officers Association (SDPOA) sought a writ of mandate to compel appellant the City of San Diego and the San Diego Police Department (together City) to provide the officer under investigation and interrogation with any tape-recorded interviews of witnesses and any rough notes taken by investigators. The court granted SDPOA's requested relief, and this appeal followed.

I

FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts are undisputed. When an officer employed by the San Diego Police Department (SDPD) is accused of misconduct, SDPD detectives investigate the accusations and, after completing the investigation,

---

[1]All further statutory references are to the Government Code unless otherwise specified.

provide the accused officer with the final written report prepared by investigators and a copy of the complaint that prompted the investigation. However, SDPD does not provide the accused officer with copies of the investigators' raw notes or copies of any tape-recorded interviews of witnesses conducted by the investigating detectives.

SDPOA filed this action for writ of mandate contending that section 3303, subdivision (g)[2] compelled City to provide the accused officer with any raw notes and tape recordings of witness interviews taken as part of the investigation.[3] City opposed the action, arguing that because section 3303, subdivision (g) lists several specific items of materials to be provided an officer under disciplinary investigation, any items not listed by that subdivision need not be provided. The court construed the terms "reports" and "complaints" in section 3303, subdivision (g) to include the raw notes and tape-recorded interviews of witnesses, and issued the requested writ of mandate.

## II

### ANALYSIS

### A. *Standard of Review*

■ We are called upon to construe the language of the Act to discern whether the terms "reports" and "complaints," as used in section 3303, subdivision (g), include the raw notes of investigators and tape-recorded interviews of witnesses, and accordingly we review de novo the trial court's ruling. (*Binkley v. City of Long Beach* (1993) 16 Cal.App.4th 1795, 1806 [20 Cal.Rptr.2d 903].) The Act does not define the terms "reports" or "complaints." (*Pasadena Police Officers Assn. v. City of Pasadena* (1990) 51 Cal.3d 564, 575 [273 Cal.Rptr. 584, 797 P.2d 608], hereafter *Pasadena*.) The *Pasadena* court, which examined the related ambiguity in the Act regarding

---

[2]SDPOA also argued that, even if section 3303, subdivision (g) of the Act did not mandate disclosure of the requested materials, a court order entered in an earlier case did require disclosure of those materials. However, because the prior court order defined the scope of mandatory disclosure by echoing the statutory language, and there is nothing in the record to suggest the court order intended a different and more expansive list of disclosable materials, the court order does not assist our analysis.

[3]Although California law does not require police to preserve all raw notes made by an investigator (81 Ops.Cal.Atty.Gen. 397 (1998)), SDPD Procedure Policy 4.13 requires that tape-recorded interviews and an officer's raw notes be preserved. Policy 4.13, section II.C. provides that "[a]ny . . . tape recording of an interview . . . or other contacts relating to an investigation shall be preserved in the appropriate official police file." Policy 4.13, section II.F.4. provides that, "Officers shall maintain original notes in a PD-145 notepad or other notepad [and] [c]ompleted notepads and tape recordings shall be kept . . . for two years."

*when* an officer becomes entitled to these materials, began its construction of the statutory language by stating that: "Because subdivision (f) of section 3303 does not specify when an officer's entitlement to the reports and complaints arises, we must determine whether the Legislature intended such disclosure to occur before or after interrogation. To discern legislative intent, we look first to the words of the statute and its provisions, reading them as a whole, keeping in mind the statutory purpose and harmonizing 'statutes or statutory sections relating to the same subject . . . both internally and with each other, to the extent possible.' " (*Pasadena,* at p. 575, quoting *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387 [241 Cal.Rptr. 67, 743 P.2d 1323].)

■ We similarly must decide whether the Legislature intended that an officer have access only to the final written report of the investigating officer and to written complaints by third persons, or whether it also intended to allow an officer to have access to the underlying data on which the final report is based.

B. *The Terms "Reports" and "Complaints" Include Any Notes and Recordings That Contain Reports and Complaints*

We look first to the language of the statute. Section 3303, subdivision (g) provides: "The complete interrogation of a public safety officer may be recorded. If a tape recording is made of the interrogation, the public safety officer shall have access to the tape if any further proceedings are contemplated or prior to any further interrogation at a subsequent time. The public safety officer shall be entitled to a transcribed copy of any notes made by a stenographer *or to any reports or complaints made by investigators or other persons,* except those [that] are deemed by the investigating agency to be confidential. . . ." (Italics added.)

City argues the term "reports" is clear and unambiguous, and refers only to the *final written* report of the investigator, and therefore notes and tape recordings that were the precursors of the final written report are beyond the scope of the statutorily mandated disclosable materials. SDPOA argues the terms "reports" and "complaints" are open to interpretation, and should be construed to include all materials that contain reports of or complaints concerning the misconduct that is the subject of the investigation.

The words of the statute, when read as a whole, support SDPOA's interpretation of the statute. The officer is entitled to *"any* reports or complaints," and those words do not limit the officer's receipt of information to the *final* written report of the investigator. Additionally, the statute

provides the officer with access to "reports or complaints made by . . . *other persons.*" To the extent that an investigator's notes or tape-recorded interviews may *contain* reports or complaints made by other persons concerning the misconduct under investigation, the statute requires their production.

The *Pasadena* court admonished that the legislative language should be interpreted "keeping in mind the statutory purpose" (*Pasadena, supra,* 51 Cal.3d at p. 575), and recognized at page 577 that "[p]rotection of peace officers from abusive or arbitrary treatment in their employment is the essence of the Act. To accomplish this, the Legislature set out certain rights and procedures." Among the protections afforded officers is the right under section 3304 to an administrative appeal in which the officer may establish a formal record of the reasons for the disciplinary action and " 'attempt to convince the employing agency to reverse its decision, either by demonstrating the falsity of charges [that] led to punitive action, or through proof of mitigating circumstances.' [Citation.]" (*Binkley v. City of Long Beach, supra,* 16 Cal.App.4th at p. 1806.) If City is correct that an accused officer is entitled to only the written complaints filed by third persons and the final written report prepared by investigators, but not to the underlying materials that might tend to show the complaints or reports were inaccurate, incomplete, or subject to impeachment for bias, the officer's ability to establish a defense at the administrative hearing could be hampered and the rights protected by the Act undermined.

The *Pasadena* court also recognized that "[s]ome of the rights that the Act affords peace officers resemble those available in a criminal investigation,"[4] and concluded that because the Act appeared to borrow from the criminal law procedural rules, the criminal law approach to the timing of discovery (which gives no right to discovery until after the charges have been filed) was a persuasive reason for concluding that an accused officer was not entitled to discovery until after he or she was interrogated. (*Pasadena, supra,* 51 Cal.3d at pp. 578-579.) A criminal defendant would be entitled to raw notes or tape-recorded statements of witnesses preserved by the police. (See generally *Thompson v. Superior Court* (1997) 53 Cal.App.4th 480, 484-487 [61 Cal.Rptr.2d 785] [raw notes can constitute " 'reports of the statements'

---

[4]For example, the *Pasadena* court noted that section 3309 to some extent incorporates the Fourth Amendment's prohibition against unreasonable searches and seizures and permits searches of an officer's workplace locker or storage space only if conducted under a warrant or with the officer's consent, although it permits a search without a warrant or consent if the officer is present during the search. The *Pasadena* court also noted that the predecessor to section 3303, subdivision (h) "is another indicator that the Legislature looked to criminal procedure as a model for the Act but then provided somewhat reduced protections," because *Miranda* warnings are required before interrogation of an accused officer who is suspected of criminal activity. (*Pasadena, supra,* 51 Cal.3d at p. 577.)

of witnesses" disclosable under Pen. Code, §§ 1054.1, subd. (f) and 1054.3, subd. (a)]; *In re Gary G.* (1981) 115 Cal.App.3d 629, 639-642 [171 Cal.Rptr. 531] [no duty to preserve notes but investigators' raw notes should be turned over if in existence when discovery order entered].) Because the Act provides an officer with protections similar to those provided criminal defendants by criminal law procedural and discovery rules, we are persuaded that section 3303, subdivision (g)'s reference to reports and complaints provides officers with protections similar to those enjoyed by criminal defendants, including the rights to raw notes and tape-recorded statements of witnesses preserved by City.

City raises two arguments in support of its construction of the statutory language. First, City argues that because section 3303, subdivision (g) clearly and unambiguously lists the items City must provide, and identifies those items to be "reports or complaints," it is not required to provide the officer with anything beyond that list. However, this argument avoids the issue of what is included in the terms "reports" and "complaints," which are not defined in the Act. (*Pasadena, supra,* 51 Cal.3d at p. 575.) City next cites the maxim *expressio unius est exclusio alterius* to assert that when the Legislature employs a term or phrase in one part of a statute but does not include it in other parts, a court should not interpret a statute to insert an omitted phrase. (*Phillips v. San Luis Obispo County Dept. etc. Regulation* (1986) 183 Cal.App.3d 372, 379 [228 Cal.Rptr. 101].) City argues that interpreting the terms "reports" or "complaints" to include the materials sought by SDPOA would offend this maxim of statutory interpretation because the statute specifically requires that an officer be provided with a copy of a tape recording of his own interview,[5] but makes no parallel requirement for other tape-recorded interviews. However, the interpretative tool provides little assistance when the statutory language of section 3303, subdivision (g) covers many different issues. (Cf. *People v. Richards* (1927) 86 Cal.App. 86, 90 [260 P. 582].) The express mention in section 3303, subdivision (g) of the tape recording of an officer's interview covers the distinct mandate that requires a single category of material (any tape recording of the first interview of the accused officer) be provided *before* the officer may be re-interviewed. Although the maxim would support the claim that City need not provide other categories of materials *before* re-interviewing an officer, it does not support the claim that City need *never* provide other types of materials to an accused officer.

Second, City argues that provisions of the Government Code regulating disclosable material in other contexts specifically state that preliminary

---

[5]The language of section 3303, subdivision (g) relied on by City states that "[i]f a tape recording is made of the interrogation, the public safety officer shall have access to the tape if any further proceedings are contemplated or prior to any further interrogation at a subsequent time."

drafts or notes are not subject to mandatory disclosure. (See, e.g., § 6254.) However, this argument is a double-edged sword, because it suggests that when the Legislature intends to require disclosure only of a final report and to exclude disclosure of notes and preliminary drafts, it is capable of expressing that intention.

### C. The Court Properly Declined to Hold an Evidentiary Hearing on the Meaning of the Term "Reports"

■ City argues that even if the terms "reports" and "complaints" are ambiguous, the trial court erred when it construed those terms without first holding an evidentiary hearing to consider expert testimony on their meaning. However, City cites no case holding that the proper interpretation of language employed by the Legislature may be aided by an evidentiary hearing at which persons who are subject to the legislation may offer their divergent understandings of its meaning. We recognize the *Pasadena* court, after noting the Act did not define the terms "reports" or "complaints" as used in the statute, stated that "[w]hen a statute does not define some of its terms, we generally look to 'the common knowledge and understanding of members of the particular vocation or profession to which the statute applies' for the meaning of those terms." (*Pasadena, supra,* 51 Cal.3d at p. 575, quoting *Cranston v. City of Richmond* (1985) 40 Cal.3d 755, 765 [221 Cal.Rptr. 779, 710 P.2d 845].) However, the *Pasadena* court did not hold that an evidentiary hearing was necessary or proper, and indeed the above-cited passage was dicta because the *Pasadena* court concluded it "need not engage in that task" (*Pasadena,* at p. 575) because the police department conceded its notes of the interview were the type of documents subject to disclosure.

More importantly, the quoted passage from *Cranston v. City of Richmond, supra,* 40 Cal.3d 755 does not suggest that when a court must interpret statutory language, it may hold an evidentiary hearing at which experts offer conflicting understandings of the meaning of the statute. *Cranston* did not evaluate the Legislature's intended meaning of ambiguous statutory terms, but instead examined whether a personnel rule provided a person of ordinary intelligence with fair notice of whether his conduct could result in disciplinary action. In *Cranston,* a city employee challenged a personnel rule that permitted the city to discharge him for " '[c]onduct unbecoming an employee of the City Service.' " He argued the rule violated due process because *unbecoming conduct* was too vague a standard to give a person of ordinary intelligence fair notice of what conduct was proscribed. (*Cranston v. City of Richmond, supra,* 40 Cal.3d at pp. 762-763.) The *Cranston* court rejected the employee's initial argument that the rule was unconstitutionally

vague in the abstract because courts do not ordinarily determine vagueness challenges in the abstract but instead examine whether the rule is vague as applied to the facts of the specific case. The employee, recognizing this general approach, argued the court may nevertheless invalidate a rule for facial invalidity when it is so vague and devoid of objective meaning that it provides no standard at all and makes it impossible to determine whether his particular conduct was within the core of proscribed conduct. (*Id.* at pp. 764-765.) Responding to this argument, *Cranston* stated at page 765: "We disagree with appellant that [the rule] provides no standard at all. It is true that, considered in isolation, the term ' "unbecoming" has no inherent, objective content from which ascertainable standards defining the proscribed conduct can be fashioned.' [Citations.] However, [the rule] does not exist, and we do not apply it, in isolation. A number of California cases have held that *where the language of a statute fails to provide an objective standard by which conduct can be judged, the required specificity may nonetheless be provided by the common knowledge and understanding of members of the particular vocation or profession to which the statute applies.*" (Italics added.)

The italicized language shows that *Cranston* held only that, when assessing whether a person of ordinary intelligence would understand what comportment was required by a regulation, an otherwise ambiguous standard may find the requisite specificity by reference to the particular profession and its "standards of probity" (*Cranston v. City of Richmond, supra,* 40 Cal.3d at p. 769) that are commonly known and understood by members of that profession. *Cranston* does not hold that the intended scope of a statutory description of disclosable materials may be narrowed or expanded by consulting the understanding of those who are subject to its requirements. Accordingly, the trial court properly declined City's request to hold an evidentiary hearing on the meaning of the terms employed by the Legislature.

## DISPOSITION

The judgment is affirmed. Respondent is entitled to costs on appeal.

Nares, Acting P. J., and McIntyre, J., concurred.

Appellants' petition for review by the Supreme Court was denied September 25, 2002.