[No. E032607. Fourth Dist., Div. Two. Sept. 11, 2003.]

UPLAND POLICE OFFICERS ASSOCIATION et al., Plaintiffs and Respondents, v.
CITY OF UPLAND et al., Defendants and Appellants.

**COUNSEL**

Liebert Cassidy Whitmore, Peter J. Brown, Nate Kowalski and J. Scott Tiedemann for Defendants and Appellants.

Jones & Mayer, Martin J. Mayer and Dean J. Pucci for California State Sheriffs Association and California Police Chiefs Association as Amici Curiae on behalf of Defendants and Appellants.

Lackie & Dammeier, Michael D. Lackie and Michael A. Morguess for Plaintiffs and Respondents.

**OPINION**

**HOLLENHORST, Acting P. J.**—The Public Safety Officers Procedural Bill of Rights Act (Act) (Gov. Code, § 3300 et seq.) gives a peace officer who is under investigation the right to a representative of his or her choice under certain conditions.[1] (§ 3303, subd. (i).) The first-impression issue presented by this case is whether this right of representation is limited in any way.

---

[1] Unless otherwise indicated, all further statutory references are to the Government Code.

The trial court granted a preliminary injunction "prohibiting [the Upland Police Department] from proceeding with an interrogation of an officer if the representative of his or her choice is unavailable." As described below, the preliminary injunction was subsequently made permanent to facilitate this appeal.

The City of Upland and its police department (collectively, the City) appeal the issuance of the injunction, contending that the statute must be read to include a reasonableness requirement.[2] Otherwise, an officer could prevent any interrogation by choosing a representative who is temporarily or permanently unavailable.[3]

We agree with the City and amici curiae and reverse the trial court's granting of the preliminary injunction.

### FACTS[4] AND PROCEDURAL HISTORY

On February 20, 2001, Sergeant Adams of the Upland Police Department (Department) gave officer Nikola Kac written notice of an internal affairs interrogation then set for February 22, 2001, at 9:00 a.m. Officer Kac was president of the Association, and the interrogation concerned an allegation that he had conducted Association business while on duty.

Upon receipt of the notice, Officer Kac called his counsel, Michael Lackie. Mr. Lackie, an attorney with the firm of Lackie and Dammeier, is the Association's counsel and had represented Officer Kac and the Association in previous interrogations. Mr. Lackie was Officer Kac's chosen representative at all times.

Mr. Lackie immediately called Sergeant Adams and asked that the interrogation be rescheduled. Sergeant Adams agreed to reschedule the interrogation to February 27, 2001, at 3:00 p.m. Although this was a mutually agreeable time, Mr. Lackie advised Sergeant Adams that he had another interrogation in North Los Angeles County in the morning, that he anticipated being done in time to attend Officer Kac's interrogation, but that he would notify Sergeant Adams if he was delayed.

---

[2] By order filed June 17, 2003, we granted a request by amici curiae California State Sheriffs Association and California Police Chiefs Association to submit a brief in support of appellants.

[3] Respondents, Upland Police Officers Association (Association) and Nikola Kac, agree that a reasonableness requirement is inherent in the statute. If it were not, an officer could prevent any investigation by choosing, for example, the President, a Supreme Court justice or another unavailable person to represent him or her.

[4] The facts, which are essentially undisputed, are taken from the declarations submitted in connection with the request for a temporary injunction.

On February 21, 2001, Officer Kac was given a notice for a second separate and unrelated interrogation regarding an alleged use of force incident. That interrogation was also set for February 27, 2001, at 3:00 p.m.

On February 27, 2001, at 1:00 p.m., Mr. Lackie called Officer Kac and told him that he was still in Burbank and would be unable to make the scheduled 3:00 interrogation. Mr. Lackie's secretary called Sergeant Adams at 2:00 p.m. and notified him of Mr. Lackie's unavailability.

Sergeant Adams refused to reschedule the interrogation for a second time and told Officer Kac he would be proceeding at 3:00. He also told Officer Kac that the officer had the right to have another person represent him in the interrogation. Officer Kac reiterated that Mr. Lackie was his representative and that he wished to proceed when his representative could be present.

At 2:30 p.m., Mr. Lackie's law partner, Dieter Dammeier, called Sergeant Adams and Captain John Cannon and asked that the interrogation be rescheduled. He told them that Officer Kac had a right to have Mr. Lackie present as his chosen representative. He immediately wrote and faxed a confirming letter to Captain Cannon. The letter reiterates the claim that Officer Kac had the right to be represented by Mr. Lackie, his chosen representative, during the interrogation. The letter indicates it was faxed at 2:59 p.m.

At 3:00 p.m., Sergeant Adams began the interrogation of Officer Kac. The first portion of the interrogation concerned the charge that Officer Kac conducted Association business while on duty. Officer Kac's declaration states: "During this interrogation, I was asked questions concerning confidential Association business, including conversations between Association officers and strategies concerning effectuating Association goals. I feel [that] had my representative been present, Sergeant Adams would not have proceeded with this line of questioning."

The second interrogation began at 3:39 p.m. Officer Kac was read his *Miranda*[5] rights and was given an administrative order to answer questions under threat of insubordination. (§ 3303, subd. (h).) He then "had no choice but to proceed with the interrogation without benefit of representation." (*Lybarger v. City of Los Angeles* (1985) 40 Cal.3d 822, 828–829 [221 Cal.Rptr. 529, 710 P.2d 329].)

On March 15, 2001, the Association and Officer Kac filed this action for injunctive relief. The complaint was subsequently amended to add a cause of action for violation of constitutional rights under 42 United States Code

---

[5] *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602].

section 1983. The complaint was followed by a request for a preliminary injunction. The motion for a preliminary injunction was heard on April 18, 2001. The trial court stated that the statute was unambiguous, and the officer had a right to have his chosen representative present. As discussed below, the motion was granted under section 3309.5. The preliminary injunction therefore states that the Upland Police Department is prohibited "from proceeding with an interrogation of an officer if the representative of his or her choice is unavailable."

On August 8, 2002, the Department filed a motion to summarily adjudicate plaintiff's fourth cause of action, relating to an alleged violation of Officer Kac's constitutional rights. On September 24, 2002, the parties entered into a settlement agreement and stipulated that judgment could be entered in accordance with the agreement for the purpose of facilitating this appeal. Judgment was entered accordingly. The judgment includes a provision that defendants are permanently enjoined from proceeding with an interrogation of an officer if the representative of his or her choice is unavailable.

### APPEALABILITY AND STANDARD OF REVIEW

In *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383 [87 Cal.Rptr.2d 453, 981 P.2d 79], our Supreme Court discussed the rule against appeal of a consent judgment, and an exception that exists when a party consents to a judgment merely to hasten an appeal. (*Id.* at pp. 399–402.) The court said: "The rule covers cases in which the parties intended a full and final settlement of their dispute, and the exception covers those in which they intended merely a hastening of its trial-court to appellate-court transfer." (*Id.* at p. 401.)

The settlement agreement invokes this exception and the parties agree that plaintiffs will not raise appealability as an issue. We agree with the parties that an appeal is proper under these circumstances.

Under the settlement agreement, the parties agreed that the preliminary injunction could be made permanent. Accordingly, the judgment as entered is in the form of a permanent injunction.

An issue arises as to the proper standard of review of such a judgment. Section 3309.5, subdivision (a) provides: "It shall be unlawful for any public safety department to deny or refuse to any public safety officer the rights and protections guaranteed to him or her by this chapter." Subdivision (c)(1) provides: "In any case where the superior court finds that a public safety department has violated any of the provisions of this chapter, the court shall render appropriate injunctive or other extraordinary relief to remedy the violation and to prevent future violations of a like or similar nature, including, but not limited to, the granting of a temporary restraining order,

preliminary, or permanent injunction prohibiting the public safety department from taking any punitive action against the public safety officer." The preliminary injunction was issued under this subdivision, and we assume that the permanent injunction in the judgment was also issued under·this subdivision.

■ The usual standard of review for the granting or denial of a preliminary injunction is the abuse of discretion standard of review. (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1109 [60 Cal.Rptr.2d 277, 929 P.2d 596].) The abuse of discretion standard of review is also appropriate for permanent injunctions issued under section 3309.5. "Although the trial court has broad discretion in fashioning a remedy, 'the relief rendered must be "appropriate." ' [Citation.] We may intervene only if there has been an abuse of discretion. [Citation.]" (*City of Los Angeles v. Superior Court* (1997) 57 Cal.App.4th 1506, 1516 [67 Cal.Rptr.2d 775].)

Conceding that a reasonableness standard may be appropriate, the Association argues that the trial court determined that the Department's actions were unreasonable, and that substantial evidence supports that decision. The problem with the argument is that the only determination made by the trial court was in its ruling on the preliminary injunction. In so ruling, the trial court only determined that "the harm to the applicant resulting from the refusal to grant [the requested preliminary injunction] outweighs the harm to the Respondent from the imposition of the injunction" and that "there is a reasonable probability the applicant will prevail on the merits of the Complaint." This standard, applicable to the grant of a preliminary injunction, is not applicable because the injunction has been made permanent.

The trial court's decision was based on the declarations and documents submitted to support and oppose the request for a preliminary injunction. In deciding the request for a preliminary injunction, the trial court did not evaluate the reasonableness of the Department's actions but only decided that the statute is unambiguous and that it gives the officer the right to representation. "[A] request for temporary equitable relief pending the determination of a case on its merits is an entreaty to the court to exercise its discretion and a ruling thereon is not a determination of the merits of the case. [Citation.] Such a pretrial ruling may not be given issue-preclusive effect with respect to the merits of the action. [Citations.]" (*People ex rel. Bender v. Wind River Mining Project* (1990) 219 Cal.App.3d 1390, 1395 [269 Cal.Rptr. 106].)

■ The preliminary injunction is only a provisional remedy to preserve the status quo until final judgment. (See generally, 6 Witkin, Cal. Procedure (4th ed. 1997) Provisional Remedies, § 287, pp. 228–229.) Application of a substantial evidence standard of review is therefore inappropriate. (*People ex*

*rel. Bender v. Wind River Mining Project, supra,* 219 Cal.App.3d 1390, 1395.) The substantial evidence standard of review is particularly inappropriate here because there was no trial. The final judgment was entered by stipulation, and it does not purport to be based on any factual determinations by the trial court.

In ruling on the request for a preliminary injunction, the trial court interpreted the statute in the light of the undisputed facts. ■ When it does so, a de novo standard of review is appropriate. "In determining the scope of coverage under the Act, we independently determine the proper interpretation of the statute and are not bound by the lower court's interpretation. [Citation.]" (*Binkley v. City of Long Beach* (1993) 16 Cal.App.4th 1795, 1806 [20 Cal.Rptr.2d 903].)

We agree and apply the de novo standard of review in interpreting the statute. "The interpretation of a statute, however, is a question of law, and we are not bound by the evidence presented on the question in the trial court. [Citations.]" (*California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856]; *Garamendi v. Executive Life Ins. Co.* (1993) 17 Cal.App.4th 504, 512 [21 Cal.Rptr.2d 578].)

As respondent Association concedes, "matters presenting pure questions of law are subject to the appellate court's independent review. *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799 [35 Cal.Rptr.2d 418, 883 P.2d 960]. Interpretation of Government Code § 3303(i) falls under this standard of review." ■ Or, to phrase it differently, abuse of discretion occurs when the trial court misinterprets the law. (Code Civ. Proc., § 1094.5 ["Abuse of discretion is established if the respondent has not proceeded in the manner required by law ...."].)

### THE PUBLIC SAFETY OFFICERS PROCEDURAL BILL OF RIGHTS ACT

In 1976, the Legislature adopted the Public Safety Officers Procedural Bill of Rights Act (§ 3300 et seq.). Section 3301 states: "The Legislature hereby finds and declares that the rights and protections provided to peace officers under this chapter constitute a matter of statewide concern. The Legislature further finds and declares that effective law enforcement depends upon the maintenance of stable employer-employee relations, between public safety employees and their employers. In order to assure that stable relations are continued throughout the state and to further assure that effective services are provided to all people of the state, it is necessary that this chapter be applicable to all public safety officers, as defined in this section, wherever situated within the State of California."

"[T]he act sets forth a list of basic rights and protections which must be afforded all peace officers (see § 3301) by the public entities which employ them. It is a catalogue of the minimum rights (§ 3310) the Legislature deems necessary to secure stable employer-employee relations (§ 3301)." (*Baggett v. Gates* (1982) 32 Cal.3d 128, 135 [185 Cal.Rptr. 232, 649 P.2d 874].) Accordingly, "the total effect of this legislation is not to deprive local governments of the right to manage and control their police departments but to secure basic rights and protections to a segment of public employees who were thought unable to secure them for themselves." (*Id.* at p. 140.)

Our Supreme Court considered the purpose of the Act in *Pasadena Police Officers Assn. v. City of Pasadena* (1990) 51 Cal.3d 564 [273 Cal.Rptr. 584, 797 P.2d 608]. Amici curiae rely on its discussion of the purpose of the Act: "Courts have long recognized that, while the off-duty conduct of employees is generally of no legal consequence to their employers, the public expects peace officers to be 'above suspicion of violation of the very laws [they are] sworn ... to enforce.' [Citations.] Historically, peace officers have been held to a higher standard than other public employees, in part because they alone are the 'guardians of peace and security of the community, and the efficiency of our whole system, designed for the purpose of maintaining law and order, depends upon the extent to which such officers perform their duties and are faithful to the trust reposed in them.' [Citation.] *To maintain the public's confidence in its police force, a law enforcement agency must promptly, thoroughly, and fairly investigate allegations of officer misconduct*; if warranted, it must institute disciplinary proceedings. [¶] The purpose of the Act is 'to maintain stable employer-employee relations and thereby assure effective law enforcement.' [Citations.] The Act requires that law enforcement agencies throughout the state afford minimum procedural rights to their peace officer employees. [Citations.] ... [¶] Although notions of fundamental fairness for police officers underlie the Act, *a number of its provisions [including section 3303] also reflect the Legislature's recognition of the necessity for internal affairs investigations to maintain the efficiency and integrity of the police force serving the community*." (*Id.* at pp. 571–572, fn. omitted, italics added.)

■ The rights of an officer who is "under investigation and subjected to interrogation ... that could lead to punitive action" are spelled out in section 3303. This section balances the idea of fundamental fairness for officers against the need for efficient internal affairs investigations. (*Pasadena Police Officers Assn. v. City of Pasadena, supra*, 51 Cal.3d 564, 572–573.)

Under section 3303, subdivision (a) the interrogation must "be conducted at a reasonable hour, preferably at a time when the public safety officer is on duty, or during the normal waking hours for the public safety officer, unless

the seriousness of the investigation requires otherwise." The subdivision does not require that the interrogation be conducted at the convenience of the officer or the officer's chosen representative. Instead, it provides that the seriousness of the investigation may allow interrogation at an unreasonable off-duty time.

Subdivisions (b) through (e) prescribe certain conditions of interrogation. Subdivision (f) provides that statements made during an interrogation are not admissible in a subsequent civil proceeding except under certain stated conditions. Subdivision (g) allows the officer to tape record the interrogation. Subdivision (h) provides that if the interrogation relates to a possible criminal charge the officer shall be advised of his or her constitutional rights. Subdivision (j) prevents the unusual loan or temporary reassignment of an officer.

Subdivision (i) is the provision in issue here. It states: "Upon the filing of a formal written statement of charges, or whenever an interrogation focuses on matters that are likely to result in punitive action against any public safety officer, *that officer, at his or her request, shall have the right to be represented by a representative of his or her choice who may be present at all times during the interrogation.* The representative shall not be a person subject to the same investigation. The representative shall not be required to disclose, nor be subject to any punitive action for refusing to disclose, any information received from the officer under investigation for noncriminal matters. [¶] This section shall not apply to any interrogation of a public safety officer in the normal course of duty, counseling, instruction, or informal verbal admonishment by, or other routine or unplanned contact with, a supervisor or any other public safety officer, nor shall this section apply to an investigation concerned solely and directly with alleged criminal activities." (Italics added.)

## THE TRIAL COURT'S INTERPRETATION OF THE STATUTE WOULD LEAD TO ABSURD RESULTS

"The fundamental rule of statutory construction is that a court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citation.] In addition, statutes must be construed so as to give a reasonable and common-sense construction consistent with the apparent purpose and intention of the lawmakers—a construction that is practical rather than technical, and will lead to wise policy rather than mischief or absurdity. [Citation.] In approaching this task, the courts may consider the consequences which might flow from a particular interpretation and must construe the statute with a view to promoting rather than defeating its general purpose and the policy behind it. [Citation.]" (*People v. Martinsen* (1987) 193 Cal.App.3d 843, 848 [238 Cal.Rptr. 530].)

More specifically, the parties disagree over application of the general principle that "Although enactments must ordinarily be construed in accordance with the plain and ordinary meaning of their words, the literal language of the measure may be disregarded to avoid absurd results and to fulfill the apparent intent of the framers. [Citation.]" (*Lynch v. State Bd. of Equalization* (1985) 164 Cal.App.3d 94, 114 [210 Cal.Rptr. 335].)

The Association appears to rely on the plain meaning rule. It argues that the statute is not ambiguous, and it means what it says: interrogation cannot proceed in the absence of the officer's chosen representative. The Department argues that interpretation is necessary because the statute is ambiguous, i.e., because "it raises more questions than it answers." The trial court found the statute unambiguous.

Although the parties disagree on whether section 3303, subdivision (i) is ambiguous, we do not need to determine the issue. ■ Even unambiguous statutes must be construed to avoid absurd results which do not advance the legislative purpose: "Ordinarily, if the statutory language is clear and unambiguous, there is no need for judicial construction. [Citation.] Nonetheless, a court may determine whether the literal meaning of a statute comports with its purpose. [Citation.] We need not follow the plain meaning of a statute when to do so would 'frustrate[] the manifest purposes of the legislation as a whole or [lead] to absurd results.' [Citations.]" (*California School Employees Assn. v. Governing Board* (1994) 8 Cal.4th 333, 340 [33 Cal.Rptr.2d 109, 878 P.2d 1321].)

In other words, " '[i]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend.' [Citations.] ... Finally, we do not construe statutes in isolation, but rather read every statute 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' [Citation.]" (*People v. Pieters* (1991) 52 Cal.3d 894, 898–899 [276 Cal.Rptr. 918, 802 P.2d 420].) Statutory interpretation is based on implementing the intent of the Legislature: "The [Civil] Code establishes the law of this State respecting the subjects to which it relates, and its provisions are to be liberally construed with a view to effect its objects and to promote justice." (Civ. Code, § 4.)

The overriding principle is that "[i]nterpretation must be reasonable." (Civ. Code, § 3542.) With this principle in mind, we examine the judgment granting a permanent injunction.

The statute provides that an officer has the right to be represented by a representative of his choice during certain interrogations. (§ 3303, subd. (i).)

The judgment states that defendants cannot proceed with an interrogation of an officer if the representative of the officer's choice is unavailable.

We first observe that literal application of the judgment leads to the conclusion that an officer could prevent any interrogation by simply choosing a representative who would never be available. For example, as Officer Adams astutely noted during his deposition: "I don't believe it's so stone set that is says, 'Well, my ... representative is President Clinton.' I don't believe that's what the fathers who wrote that legislation meant." In other words, an officer cannot say "I want Antonin Scalia for my representative and, since he is unavailable, you cannot interrogate me."

We are confident that the Legislature did not intend to allow the officer to so easily escape all interrogations. As noted above, our Supreme Court has emphasized the need for prompt investigations of allegations of officer misconduct. (*Pasadena Police Officers Assn. v. City of Pasadena, supra,* 51 Cal.3d 564, 572.) The Act provides detailed rules for such interrogations and those rules reflect the Legislature's balancing of competing interests. (*Id.* at pp. 572–573.) The rules established by the Legislature include rules relating to the times when such interrogations could be held. (§ 3303, subd. (a).) Nothing in subdivision (a) suggests that interrogations may be repeatedly postponed, or that the time chosen for the interrogation is subject to the schedule of the chosen representative, particularly when, as in this case, the interrogation of the officer in this case was set at a mutually agreeable time.

The parties seem to agree that interpretation of the statute must be reasonable. The Department argues that its "construction of the provision is that interrogations must be scheduled and conducted in a reasonably prompt and efficient manner." The Department urges that "the controlling principles [in interpreting section 3303, subdivision (i)] should be reasonableness and common sense."

The Association does not disagree. It states that its "views are not necessarily inconsistent with [the Department's] repeated references that one must at some point read into Govt. Code § 3303(i) a degree of 'reasonableness and common sense' in deciding whether [the Department] complied with the Act ...."[6] (Fn. omitted.)

Infusion of a reasonableness requirement avoids the absurd result postulated above and allows the Department to carry out interrogations which could lead to punitive actions or criminal charges in a timely manner. The

---

[6] Respondents go on to argue that the trial court found that the Department's actions were unreasonable, and that substantial evidence supports that decision. We disagree for the reasons stated above.

officer, on the other hand, retains all the protections of the Public Safety Officers Bill of Rights Act, and the safeguards stated in section 3303 will continue to protect the officer. A reasonableness interpretation therefore carries out the legislative intent to protect the officer during interrogations without eliminating the ability of the Department to carry out prompt and timely interrogations of its own officers.

We agree with the Department: "Law enforcement needs to conduct interrogations in a reasonably prompt manner, so that subjects can be interviewed and evidence gathered while memories are still fresh. Without the ability to conduct expeditious investigations, law enforcement will be unable to investigate allegations of misconduct by officers who may compromise the Department's reputation for integrity." Although the Legislature clearly intended to give police officers procedural rights in interrogations, it equally clearly did not intend to allow the officers to dictate, by their choice of representative, whether an interrogation would occur at all.

██ More specifically, we fully support the officer's right to be represented by a person of his or her choice during an interrogation. We only hold that such a right is not unlimited. The officer must choose a representative who is reasonably available to represent the officer, and who is physically able to represent the officer at the reasonably scheduled interrogation. But it is the officer's responsibility to secure the attendance of his or her chosen representative at the interrogation. If he or she is unable to do so, the officer should select another representative so that the interrogation may proceed "at a reasonable hour." (§ 3303, subd. (a).) This is particularly true when, as here, the interrogation has already been scheduled at a mutually agreeable time. Neither the Department nor the officer should be expected to change their schedules simply to accommodate a busy attorney, particularly since other members of the firm could have represented the officer at the scheduled questioning.[7]

We therefore conclude that the judgment enjoining the Department from proceeding with an interrogation when the officer's chosen representative is unavailable cannot stand. The statutory provision must be interpreted in a reasonable and commonsense manner by all parties to avoid unnecessary litigation.

---

[7] We note that attorney Dammeier does not state in his declaration that he was unavailable to represent Officer Kac. Instead, he states that he was contacted at 2:30 p.m. and immediately wrote and faxed a protest letter. We agree with the Department that, in the time it took to write the letter, he could have driven to the Department to represent Officer Kac in the interrogation. There was also no showing that the other three attorneys in the firm were unavailable and, in any event, the chosen representative need not be an attorney.

## THE DEPARTMENT'S OTHER ARGUMENTS

Applying a reasonableness standard, the Department argues that the record shows that it acted reasonably and the Association acted unreasonably in this particular instance. However, as discussed above, the record shows no such thing. The trial court only granted a motion for a preliminary injunction. It did not conduct a trial on the merits, and it made no factual determinations.

The Department also argues that analogous federal case law supports its position. It premises this argument on the case of *N.L.R.B. v. J. Weingarten, Inc.* (1975) 420 U.S. 251 [43 L.Ed.2d 171, 95 S.Ct. 959] (*Weingarten*). In that case, the employer conducted an investigatory interview of one of its employees regarding the employee's suspected theft of food from the employer. The employee requested that a union representative be present at the interview. The request was denied and an unfair labor practice proceeding was brought. The Supreme Court considered whether an unfair labor practice had occurred under section 8(a)(1) of the National Labor Relations Act. The court noted that section 7 of that act gives the employee the right to engage in concerted activities and it therefore held that "[t]he action of an employee in seeking to have the assistance of his union representative at a confrontation with his employer clearly falls within the literal wording of § 7 ...." (*Weingarten,* at p. 260.) The court therefore upheld the NLRB's determination that it was an unfair labor practice to deny the employee's request to have a union representative present "at an investigatory interview which the employee reasonably believed might result in disciplinary action ...." (*Id.* at p. 252.)

The Department cites subsequent NLRB cases to support its conclusion that "*Weingarten* does not require an employer to postpone an interview because the specific union representative the employee requests is absent, so long as another union representative is available at the time set for the interview. [Citations.]"

For example, in *Coca-Cola Bottling Co. of Los Angeles* (1977) 227 N.L.R.B. 1276, the Board said: "[T]here is nothing in the Supreme Court's opinion in *Weingarten* which indicates that an employer must postpone interviews with its employees because a particular union representative, here the shop steward, is unavailable either for personal or other reasons for which the employer is not responsible, where another representative is available whose presence could have been requested by the employee in the absent representative's place. Indeed, the Supreme Court was careful to point out that the exercise by employees of the right to representation at an interview may not interfere with legitimate employer prerogatives. Certainly, the right to hold interviews of this type without delay is a legitimate employer prerogative." (*Id.* at p. 1276, fns. omitted.) The Department argues the same should be true here.

The Department also cites *Robinson v. State Personnel Bd.* (1979) 97 Cal.App.3d 994 [159 Cal.Rptr. 222]. In that case, a state employee was dismissed for refusal to attend a disciplinary meeting with his superiors without the presence of a union representative. The court reviewed the various California labor relations statutes and concluded that *Weingarten's* reasoning should be used in interpreting comparable California statutes. (*Robinson,* at p. 1001; see also *Civil Service Assn. v. City and County of San Francisco* (1978) 22 Cal.3d 552, 567–568 [150 Cal.Rptr. 129, 586 P.2d 162].)

As amici curiae point out, the California statutes, including the Act and the Meyers-Milias-Brown Act (Gov. Code, § 3500 et seq.) are modeled on section 7 of the National Labor Relations Act (29 U.S.C. § 157). "Where, as here, California law is modeled on federal laws, federal decisions interpreting substantially identical statutes are unusually strong persuasive precedent on construction of our own laws. [Citations.]" (*Kamen v. Lindly* (2001) 94 Cal.App.4th 197, 203 [114 Cal.Rptr.2d 127].) ■ We agree with the Department and amici curiae that *Weingarten* and its progeny are persuasive authority which supports the Department's contention that it is a legitimate employer prerogative to schedule an interrogation in a prompt and timely manner so long as the officer has a reasonable opportunity to obtain representation. This is particularly true for interrogations concerning alleged officer misconduct.

### THE ASSOCIATION'S OTHER ARGUMENTS

The Association argues that a peace officer's rights are greater than in the normal collective bargaining context and those greater rights require that the officer be given counsel of his or her choice. The Association relies on *Pasadena Police Officers Assn. v. City of Pasadena, supra,* 51 Cal.3d 564. In that case, our Supreme Court held that the Public Safety Officers Procedural Bill of Rights Act does not compel preinterrogation discovery. (*Id.* at pp. 568–569.) The court said: "Protection of peace officers from abusive or arbitrary treatment in their employment is the essence of the Act. To accomplish this, the Legislature set out certain rights and procedures. Some of the rights that the Act affords peace officers resemble those available in a criminal investigation. [Nevertheless, the wording of the Act] suggests a recognition by the Legislature that a law enforcement agency should retain greater latitude when it investigates suspected officer misconduct than would be constitutionally permissible in a criminal investigation. Limitations on the rights of those employed in law enforcement have long been considered 'a necessary adjunct to the [employing] department's substantial interest in maintaining discipline, morale and uniformity.' [Citation.] That interest is increased when preservation of public confidence in the trustworthiness and integrity of its police force is at stake." (*Id.* at p. 577, fn. omitted; see also

*San Diego Police Officers Assn. v. City of San Diego* (2002) 98 Cal.App.4th 779, 784–786 [120 Cal.Rptr.2d 609].)

At the same time, our Supreme Court recognized the importance of timely internal affairs investigations: "Although notions of fundamental fairness for police officers underlie the Act, a number of its provisions also reflect the Legislature's recognition of the necessity for internal affairs investigations to maintain the efficiency and integrity of the police force serving the community." (*Pasadena Police Officers Assn. v. City of Pasadena, supra,* 51 Cal.3d 564, 572.) It therefore recognized that the Act balanced these two competing interests. (*Id.* at pp. 572–573.)

Although we agree with the Association that the right to a representative under section 3303, subdivision (i) resembles the right to counsel of choice in criminal cases, even the right to counsel in criminal cases is not absolute or unlimited. Instead, the court will scrutinize the reason for a counsel's unavailability in ruling on a motion for a continuance. (See, e.g., Pen. Code, § 1050; 5 Witkin, Cal. Criminal Law (3d ed. 2000) Criminal Trial, §§ 342–343, pp. 500–503.) In such a case, the trial court will not abuse its discretion if it grants a reasonable continuance. (See, e.g., *People v. Wilkins* (1990) 225 Cal.App.3d 299, 304–305 [275 Cal.Rptr. 74].) "Thus, though it is clear that a defendant has no *absolute* right to be represented by a particular attorney, still the courts should make all reasonable efforts to ensure that a defendant financially able to retain an attorney of his own choosing can be represented by that attorney. [Citation.]" (*People v. Crovedi* (1966) 65 Cal.2d 199, 207 [53 Cal.Rptr. 284, 417 P.2d 868], fn. omitted.) In the omitted footnote, our Supreme Court said: " 'It is manifest that the courts cannot in every case await the convenience of some attorney before they can function. Reduced to its lowest terms this would allow a popular attorney to have the courts marking time to serve his convenience.' [Citation.]" (*Id.* at p. 207, fn. 4.)

The same rule must apply to the interpretation of section 3303, subdivision (i): the officer must be given a reasonable opportunity to obtain a representative of his or her choice to be present at the scheduled interrogation. The trial court's judgment, which enjoined defendants from proceeding with an interrogation of an officer if the chosen representative of the officer was unavailable, cannot stand.

*DISPOSITION*

The judgment is reversed. Appellants are to recover their costs on appeal.

Ward, J., and Gaut, J., concurred.

Respondent's petition for review by the Supreme Court was denied December 17, 2003. Kennard, J., was of the opinion that the petition should be granted.