Filed 5/13/21 (unmodified opn. attached)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| OAKLAND POLICE OFFICERS' ASSOCIATION et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> CITY OF OAKLAND, <br><br> Defendant and Appellant. | A158662 <br><br> (Alameda County Super. Ct. No. RG19002328) <br><br> ORDER MODIFYING OPINION AND DENYING REHEARING <br><br> [NO CHANGE IN JUDGMENT] |

It is ordered that the opinion filed herein on April 26, 2021, be modified as follows:

1. On page 22, in the first full paragraph beginning with "Under this construction…," remove the word "may" and replace it with "must", so that the paragraph shall now read as:

"Under this construction of subdivision (g), and consistent with *City of Pasadena*, no materials identified in subdivision (g) must be disclosed prior to an initial interrogation of a peace officer."

The modification does not change the appellate judgment. (Cal. Rules of Court, rule 8.264(c)(2).)

Respondent's petition for rehearing is denied.

Dated:

_____
Humes, P.J.

1

Alameda County Superior Court

The Honorable Frank Roesch

Counsel:

Barbara J. Parker, City Attorney, Ryan Richardson, Special Counsel, Jennifer Logue, Supervising City Attorney, Hanson Bridgett, Adam Hofmann for Defendant and Appellant.

Rains, Lucia Stern St Phalle & Silver, Zachery A. Lopes and Timothy Talbot for Plaintiffs and Respondents.

Liebert Cassidy Whitmore, J. Scott Tiedmann, Alex Y. Wong for League of California Cities and Los Angeles County Police Chief's Association as Amicus Curiae on behalf of Defendant and Appellant.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| OAKLAND POLICE OFFICERS' ASSOCIATION et al., Plaintiffs and Respondents, v. CITY OF OAKLAND, Defendant and Appellant. | A158662 (Alameda County Super. Ct. No. RG19002328) |

This appeal concerns the meaning of certain requirements described in section 3303, subdivision (g) of the Public Safety Officers Procedural Bill of Rights Act (Gov. Code,[1] § 3300 et seq., POBRA), mandating the disclosure of complaints, reports, and other materials to a peace officer under investigation for misconduct. In December 2017, a citizen filed a complaint against officers from the Oakland Police Department (Department), alleging that the officers violated the citizen's rights in various ways while conducting a mental health welfare check. Following an internal investigation, the Department cleared the officers of misconduct. The Oakland Community Police Review Agency (CPRA), a civilian oversight agency with independent authority to investigate claims of police misconduct, conducted its own investigation.

---

[1] All statutory references are to the Government Code unless otherwise specified.

Before the CPRA's formal interrogation of the officers, counsel for the officers demanded copies of all "reports and complaints" prepared or compiled by investigators pursuant to section 3303, subdivision (g). The CPRA refused to disclose these materials. Based on its investigation, the CPRA determined that officers knowingly violated the complainant's civil rights by entering the residence and seizing property without a warrant, and then actively concealed this violation from investigators.

The officers and their police union filed a petition for writ of mandate alleging that the City of Oakland (City) violated their procedural rights by refusing to disclose reports and complaints prior to holding the supplemental interrogations. The Fourth District Court of Appeal previously considered the same issue in *Santa Ana Police Officers' Association v. City of Santa Ana* (2017) 13 Cal.App.5th 317, 328 (*City of Santa Ana*), holding that POBRA requires the disclosure of such materials after an initial interrogation and " 'prior to any further interrogation.' " Feeling constrained by *City of Santa Ana*, the trial court below granted the petition and ordered the City to disregard the interrogation testimony in any current or future disciplinary proceedings against the officers.

We conclude that mandatory disclosure of complaints and reports prior to any subsequent interrogation of an officer suspected of misconduct is inconsistent with the plain language of the statute and undermines a core objective under POBRA—maintaining the public's confidence in the effectiveness and integrity of law enforcement agencies by ensuring that internal investigations into officer misconduct are conducted promptly, thoroughly, and fairly. Under our reading of section 3303, subdivision (g), an investigating agency's disclosure obligations should instead be guided by whether the agency designates otherwise discoverable materials as

2

confidential. While confidential materials may be withheld pending the investigation—and may not be used as the basis for disciplinary proceedings absent disclosure—nonconfidential material should be disclosed upon request. Accordingly, we reverse the judgment and remand the matter for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Investigation*

A welfare check conducted by officers in December 2017 resulted in a citizen complaint alleging an unlawful search and seizure, excessive use of force, harassment, discrimination, and property damage. On the date in question, Officer Doe 1 and Officer Doe 2 responded to the citizen's residence after a report was made that the citizen had been drinking, was suicidal, and was armed with a firearm. Smelling alcohol on the citizen, the officers handcuffed and conducted a body search, confiscating a weapon. Officer Doe 2 then asked the citizen for permission to check if anyone was in the residence. The citizen consented, and Doe Officer 2 did a quick protective sweep, finding no one inside. While Officer Doe 1 placed the citizen in a patrol vehicle, Officer Doe 2 re-entered the residence. Officer Doe 2 then exited the residence and asked the citizen about the presence of a weapon. After the citizen refused to disclose the location of a weapon, Officer Doe 2 entered the residence for a third time, locating and confiscating a weapon.

Officer Doe 3, Officer Doe 4, and a fifth officer arrived after the citizen had been placed in the patrol vehicle. A mobile crisis team also arrived and placed the citizen on a psychiatric hold pursuant to Welfare and Institutions Code section 5150. After the citizen was transported, Officer Doe 1 prepared a search warrant and affidavit to search the residence in accordance with

Welfare and Institutions Code section 8102.[2] The Doe Officers and an additional officer conducted a search of the residence and confiscated a number of items.

As part of the Department's investigation, internal affairs took the citizen's statement and reviewed existing body worn camera footage and relevant documents. The Doe Officers were separately interrogated by the Department in April and May of 2018. The Doe Officers were cleared of any wrongdoing by the Department in June 2018. However, investigators noted two areas of concern. First, Doe Officer 2 should have waited for a third officer to arrive before conducting a protective sweep of the house. Second, a search warrant should have been obtained prior to searching the citizen's residence and seizing a weapon. The Department recommended training for certain of the officers involved.

In September 2018, the CPRA notified each of the Doe Officers that they would be re-interviewed concerning the same December 2017 incident. Prior to these supplemental interrogations, counsel for the Doe Officers sought discovery of relevant reports and complaints under POBRA and the *City of Santa Ana* decision.[3] Although the CPRA agreed to provide recordings and transcribed notes from the prior interrogations conducted by the Department, it refused to produce any other materials and insisted that the Doe Officers either sit for further interrogations or face possible punitive action.

---

[2] Welfare and Institutions Code section 8102 allows for the confiscation of any firearm or other deadly weapon from a person who has been detained for examination of his or her mental condition.

[3] There is no dispute that the Doe Officers were all public safety officers for purposes of POBRA.

All four Doe Officers submitted to further interrogations in November 2018.  Based in part on those interrogations, the CPRA found that the Doe Officers had violated the citizen's civil rights and recommended discipline. Specifically, the CPRA concluded that the Doe Officers knowingly violated the citizen's Fourth Amendment rights by re-entering the citizen's residence without a warrant or the existence of exigent circumstances.  The CPRA also found that the Doe Officers gave misleading statements to investigators, omitted material details, and worked together in an attempt to conceal their misconduct.  The agency sustained multiple findings of misconduct against certain Doe Officers and recommended that the Department implement a number of changes to its policies regarding searches and seizures.

B.  *Trial Court Proceedings*

Oakland Police Officers' Association and the Doe Officers (collectively, petitioners) filed the instant action in January 2019, claiming that the City violated the officers' procedural rights by refusing to disclose all relevant "reports and complaints" prior to subsequent interrogations by the CPRA. Petitioners sought a writ of mandate ordering the City to comply with section 3303, subdivision (g), destroy any recordings of the unlawful interrogations, and cease any disciplinary proceedings against the Doe Officers.  They further requested a declaration that the Doe Officers' statutory POBRA rights had been violated and sought civil penalties with respect to those violations.

While these proceedings were pending in the trial court, the parties agreed to the following stipulated facts:

(1) "The interviews of Officer Doe 1, on or about November 14, 2018, Officer Doe 2, on or about November 13, 2018, Officer Doe 3, on or about November 9, 2018, and Officer Doe 4, on or about November 13, 2018, were

5

'further interrogation[s]' under the meaning of Government Code section 330[3](g)."

(2) "Prior to these further interrogations, counsel for Officer Does 1 through 4, Justin Buffington, requested that [City] turn over reports and complaints as discussed within Government Code section 330[3](g) and *Santa Ana Police Officers Association v. City of Santa Ana* (2017) 13 Cal.App.5th 317."

(3) "Before those further interrogations, and at the time of Justin Buffington's requests for reports and complaints, the City was in possession of reports and/or complaints as discussed within Government [C]ode section 330[3](g)."

(4) "On November 5, 2018, Anthony Finnell sent an email to Justin Buffington and Joan Saupe, which stated, 'Upon the advice of counsel, the CPRA denies your requests for "reports and complaints" and will not produce said material. (See *Pasadena Police Officers Association v. City of Pasadena,* 797 P.2d 608 (1990).)' Mr. Finnell's email also set a schedule for three officers to be interviewed and stated, 'Refusal to submit to the interviews may subject your clients to punitive action. (Gov. Code sec. 3303(e).)' "

(5) "On November 6, 2018, Mr. Buffington sent an email to Mr. Finnell, which stated, 'The *Pasadena* case only applies to pre-interrogation discovery, not post-interrogation discovery. In fact, the *Santa Ana* case harmonizes and relies on the *Pasadena* case in determining that officers are entitled to reports and complaints. Furthermore, the California Supreme Court declined to hear an appeal of the *Santa Ana* case, making it settled law. Unfortunately, I will be forced to litigate this matter in Alameda County Superior Court. Please be advised that reliance on the advice of counsel is not a valid defense.' "

6

After hearing, the trial court granted the writ petition, reasoning as follows: "The Court is bound by *Santa Ana*, which plainly holds that 'reports and complaints also must be produced "prior to any further interrogation." ' [Citation.] This holding is not inconsistent with the Supreme Court's holding in *Pasadena Police Officers' Association v. City of Pasadena* [hereafter '*Pasadena POA*'] (1990) 51 Cal.3d 564, which addressed only whether notes and reports must be produced before the initial interrogation. The Court is bound by the holding in *Santa Ana*, notwithstanding the conflict between that case's holding and the Supreme Court's reasoning in *Pasadena POA* that 'granting discovery before interrogation could frustrate the effectiveness of any investigation, whether criminal or administrative' (*id.* at p. 578) and would be 'contrary to sound investigative practices' (*id.* at p. 579) [citation]." (Italics added.) In the resulting judgment and writ of mandate, the trial court ordered the City to comply with section 3303, subdivision (g), and "disregard, in any current or future proceedings, the interrogation testimony gathered from Doe Officers without prior compliance" with that statute as interpreted by *City of Santa Ana*. The court further ordered that the City could not "hold disciplinary hearings for Doe Officers until final judgment is entered in this matter, following either the expiration of [City's] time to appeal or issuance of a remittitur by the Court of Appeal."

This appeal followed. After briefing was completed, we granted a request by the League of California Cities and the Los Angeles County Police Chiefs' Association to file an amicus brief supporting the City's position.[4]

---

[4] We granted a related request by amici curiae for judicial notice of the legislative history underlying section 3303 on that same date. (Evid. Code, §§ 452, subd. (c) & 459, subd.(a); see, e.g., *Stewart v. Rolling Stone LLC* (2010) 181 Cal.App.4th 664, 676, fn.8.) The judicial notice requests by the parties filed February 6, 2020 and March 17, 2020—which were both deferred

Following oral argument in this matter, we requested supplemental briefing concerning the applicability of the confidentiality provision in section 3303, subdivision (g) to this appeal. With the parties' supplemental letter briefs now received, the matter is resubmitted and before us for decision.

## DISCUSSION

This appeal concerns the interpretation of disclosure requirements described in section 3303, subdivision (g), and in particular whether investigative reports or complaints must be disclosed to a peace officer under investigation for misconduct prior to any further interrogation of that officer. On an appeal from an order granting mandamus relief, we are not bound by the trial court's interpretation of statutory or decisional law. We review such questions of law de novo. (*Daugherty v. City and County of San Francisco* (2018) 24 Cal.App.5th 928, 944 (*Daugherty*).)

I.   Relevant Law

*A.   Public Safety Officers Procedural Bill of Rights Act*

Initially enacted in 1976 (Stats. 1976, ch. 465, § 1, p. 1202), POBRA "sets forth a list of basic rights and protections which must be afforded all peace officers [citation] by the public entities which employ them. It is a catalogue of the minimum rights [citation] the Legislature deems necessary to secure stable employer-employee relations." (*Baggett v. Gates* (1982) 32 Cal.3d 128, 135; *White v. County of Sacramento* (1982) 31 Cal.3d 676, 681 [POBRA "is concerned primarily with affording individual police officers certain procedural rights during the course of proceedings which might lead to the imposition of penalties against them"].) "These procedural protections . . . serve the legislative goal of stable employer-employee

_____

pending consideration of this appeal—are denied as unnecessary to our resolution of the case.

8

relations, for '[e]rroneous action can only foster disharmony, adversely affect discipline and morale in the workplace, and thus ultimately impair employer-employee relations and the effectiveness of law enforcement services.' " (*Pasadena Police Officers Assn. v. City of Pasadena* (1990) 51 Cal.3d 564, 584 (*City of Pasadena*).)

Section 3303 "prescribes protections that apply when a peace officer is interrogated in the course of an administrative investigation that might subject the officer to punitive action, such as 'dismissal, demotion, suspension, reduction in salary, written reprimand, or transfer for purposes of punishment.' " (*City of Pasadena*, *supra*, 51 Cal.3d at p. 574, quoting § 3303; see *Gilbert v. City of Sunnyvale* (2005) 130 Cal.App.4th 1264, 1283 (*Gilbert*) [same].) "To ensure fair treatment of an officer during an internal affairs interrogation, section 3303 requires that the employing agency notify the officer to be interrogated of the identity of the interrogating officers (§ 3303, subd. (b)), and of 'the nature of the investigation prior to any interrogation' (§ 3303, subd. (c)). It also prohibits abusive interrogation techniques. (§ 3303, subds. (a) [interrogation to be conducted at a reasonable hour], (b) [no more than two interrogators], (d) [length of the interrogation session not to be unreasonable; subject must be allowed to attend to physical necessities], and (e) [no abusive language, promises or threats].) If the interrogation focuses on matters likely to result in punitive action against the peace officer, section 3303 allows the officer to designate a representative to be present at the interrogation, provided that the representative is not someone subject to the same investigation. (§ 3303, subd. (h) [now subd. (i)].) If criminal charges are contemplated, section 3303 requires immediate advisement of the so-called *Miranda* rights. (§ 3303, subd. (g) [now subd. (h)].)" (*City of Pasadena*, *supra*, 51 Cal.3d at p. 574.)

9

Balanced against the need to afford peace officers a fair process, these procedural safeguards also reflect the institutional and public importance of ensuring prompt, thorough, and impartial investigations of police misconduct claims. (*City of Pasadena*, *supra*, 51 Cal.3d at p. 572; see also *Daugherty*, *supra*, 24 Cal.App.5th at p. 947 [" 'The various procedural protections provided by POBRA "balance the public interest in maintaining the efficiency and integrity of the police force with the police officer's interest in receiving fair treatment." ' "].) As the Supreme Court explained more than forty years ago when it interpreted the same POBRA provision at issue in this appeal: "To keep the peace and enforce the law, a police department needs the confidence and cooperation of the community it serves. Even if not criminal in nature, acts of a police officer that tend to impair the public's trust in its police department can be harmful to the department's efficiency and morale. Thus, when allegations of officer misconduct are raised, it is essential that the department conduct a prompt, thorough, and fair investigation. Nothing can more swiftly destroy the community's confidence in its police force than its perception that concerns raised about an officer's honesty or integrity will go unheeded or will lead only to a superficial investigation." (*City of Pasadena*, *supra*, 51 Cal.3d at p. 568.)

The Supreme Court has thus recognized that "[l]imitations on the rights of those employed in law enforcement have long been considered 'a necessary adjunct to the [employing] department's substantial interest in maintaining discipline, morale and uniformity[,]' " especially when "preservation of public confidence in the trustworthiness and integrity of its police force is at stake." (*City of Pasadena*, *supra*, 51 Cal.3d at p. 577.) For example, POBRA requires officers to comply with administrative interrogations, and the refusal to sit for an interrogation or to answer

questions may be grounds for punitive action. (*Id*. at p. 574; see § 3303, subd. (e) ["an officer refusing to respond to questions or submit to interrogations shall be informed that failure to answer questions directly related to the investigation or interrogation may result in punitive action"].) With this background in mind, we review the Supreme Court's opinion in *City of Pasadena* and subsequent appellate decisions that have construed the POBRA provision at issue in this appeal—section 3303, subdivision (g).

### B.   *Judicial Construction of Section 3303, Subdivision (g)*

Subdivision (g) prescribes rules for the discovery of materials related to an interrogation of a peace officer for alleged misconduct. It provides as follows: "The complete interrogation of a public safety officer may be recorded. If a tape recording is made of the interrogation, the public safety officer shall have access to the tape if any further proceedings are contemplated or prior to any further interrogation at a subsequent time. The public safety officer shall be entitled to a transcribed copy of any notes made by a stenographer or to any reports or complaints made by investigators or other persons, except those which are deemed by the investigating agency to be confidential. No notes or reports that are deemed to be confidential may be entered in the officer's personnel file. The public safety officer being interrogated shall have the right to bring his or her own recording device and record any and all aspects of the interrogation."

In *City of Pasadena*, the Supreme Court considered the "narrow issue" of whether subdivision (g) (then subdivision (f)) grants "preinterrogation discovery rights to a peace officer who is the subject of an internal affairs investigation." (*City of Pasadena*, *supra*, 51 Cal.3d at pp. 568-569.) An investigator had interviewed Officer Ford during an internal affairs investigation into possible insubordination by Officer Diaz. When Officer

11

Diaz appeared for a scheduled administrative interrogation, he argued that he was not required to answer any questions until he was given access to the notes from the Ford interview. The investigator refused to disclose the notes. (*Id.* at p. 570.) Following a lawsuit by the officer, the trial court concluded that the statute required preinterrogation disclosure of "reports and complaints" such as the notes of the Ford interview. (*Id.* at p. 571.) The court of appeal affirmed, concluding that a public safety officer who is the subject of an internal affairs investigation is entitled under POBRA to "copies of nonconfidential reports and complaints" prior to being interrogated. (*Ibid*.)

The Supreme Court reversed. It concluded that "in allowing an officer under administrative investigation access to reports and complaints, the Legislature intended the right to such access to arise after, rather than before, the officer's interrogation." (*City of Pasadena*, *supra*, 51 Cal.3d at p. 569.) Looking first to the statutory language, the Court noted that subdivision (f) (now subdivision (g)) does not specify *when* an officer's entitlement to "reports and complaints" arises. (*Id.* at 575.) It observed, however, that the provision also grants an officer access to any recording of the officer's interrogation, as well as to transcribed stenographer's notes memorializing the interrogation, both of which logically could only be provided after an interrogation. (*Id.* at pp. 575-576.) Moreover, since "the Legislature placed the provision regarding disclosure of reports and complaints and the provision specifying entitlement to transcribed notes *in the same sentence* in subdivision [(g)]," the Court determined "that the Legislature must have intended the discovery rights in each instance to be coextensive, entitling the officer to copies of reports and complaints and transcribed stenographer's notes after the interrogation." (*Id.* at p. 576.)

12

The Supreme Court further reasoned that when the Legislature has required that certain acts described in section 3303 be performed before the interrogation, it used the words " 'prior to.' " (*City of Pasadena*, *supra*, 51 Cal.3d at p. 576; see, e.g., § 3303, subd. (c) "[[t]he public safety officer . . . shall be informed of the nature of the interrogation *prior to* any interrogation"].) In contrast, "the words 'prior to' do not appear in that part of subdivision [(g)] requiring disclosure of reports and complaints." (*Ibid.*) "When the Legislature 'has employed a term or phrase in one place and excluded it in another, it should not be implied where excluded.' " (*Ibid.*) Thus, the omission of the phrase "prior to" in the sentence mandating disclosure of reports and complaints indicated that the Legislature intended for such disclosures to occur *after* an interrogation. (*Ibid.*)

Buttressing the Supreme Court's textual analysis was its discussion of the legislative purpose underlying POBRA. The Supreme Court emphasized the Legislature's intent to strike a balance between safeguarding a peace officer's procedural rights and maintaining "public confidence in the trustworthiness and integrity of its police force" through prompt, thorough, and fair investigations of officer misconduct. (*City of Pasadena*, *supra*, 51 Cal.3d at pp. 572, 577.) The Court explained that, while some of the rights afforded police officers under POBRA "resemble those available in a criminal investigation," POBRA also evinces "a recognition by the Legislature that a law enforcement agency should retain greater latitude when it investigates suspected officer misconduct than would be constitutionally permissible in a criminal investigation." (*Id.* at p. 577; see also *ibid.* ["the Legislature looked to criminal procedure as a model for [POBRA] but then provided somewhat reduced protections"].) The Court concluded that disclosure of investigative reports and other materials before an interrogation was "not essential to the

13

fundamental fairness of an internal affairs investigation" and, indeed, was "without precedent." (*Id.* at p. 578.) In a criminal investigation, for example, the right to discovery "does not arise until charges have been filed and the suspect becomes an accused." (*Ibid.*) Moreover, granting discovery before interrogation "could frustrate the effectiveness of any investigation" (*ibid*), "might color the recollection of the person to be questioned or lead that person to conform his or her version of an event to that given by witnesses already questioned" (*id.* at p. 579), and "would be contrary to sound investigative practices." (*Ibid.*)

In sum, "entitlement to *preinterrogation* discovery is neither apparent from the language of subdivision [(g)] nor fundamental to the fairness of an internal affairs investigation." (*City of Pasadena*, *supra*, 51 Cal.3d at p. 579.) Further, mandating such discovery "might jeopardize public confidence in the efficiency and integrity of its police force." (*Ibid.*) The Supreme Court thus held that "the Legislature intended subdivision [(g)] to require law enforcement agencies to disclose reports and complaints to an officer under an internal affairs investigation only *after* the officer's interrogation."[5] (*Ibid.*)

Following the *City of Pasadena* opinion, several appellate courts have addressed the scope of the "reports and complaints" disclosure requirement under section 3303, subdivision (g). In *San Diego Police Officers Assn. v. City of San Diego* (2002) 98 Cal.App.4th 779 (*City of San Diego*), the Fourth District Court of Appeal concluded that reports and complaints subject to disclosure under this provision "include all materials that contain reports of

---

[5] Because the high court concluded that preinterrogation disclosure was not required by subdivision (g), it declined to consider the agency's argument that the materials at issue were confidential because their disclosure prior to the interrogation "would impair the investigator's ability to evaluate the credibility of [the officer]." (*City of Pasadena*, *supra*, 51 Cal.3d at p. 580.)

or complaints concerning the misconduct that is the subject of the investigation," including tape-recorded interviews of witnesses and raw notes of investigators. (*Id.* at pp. 782-784.) The appellate court reasoned that if "an accused officer is entitled to only the written complaints filed by third persons and the final written report prepared by investigators, but not to the underlying materials that might tend to show the complaints or reports were inaccurate, incomplete, or subject to impeachment for bias, the officer's ability to establish a defense at the administrative hearing could be hampered and the rights protected by [POBRA] undermined." (*Id.* at p. 784.)

The Sixth District Court of Appeal disagreed with this view in *Gilbert*, *supra*, 130 Cal.App.4th 1264. According to the *Gilbert* court, both "report" and "complaint" as used in the statute "suggest a more formal presentation than the raw or original source materials from which a report may be drawn." (*Id.* at p. 1286.) In rejecting an officer's right to discovery of investigators' notes, the appellate court explained: "The only 'notes' to which such officer is expressly entitled under section 3303, subdivision (g), are the 'notes made by a stenographer,' who was implicitly present at the officer's interrogation. Fair treatment of such officer does not require that all the material amassed in the course of the investigation, such as raw notes, written communications, records obtained, and interviews conducted, be provided to the officer following the officer's interrogation." (*Id.* at pp. 1286-1287; see also *Davis v. County of Fresno* (2018) 22 Cal.App.5th 1122, 1135-1138, (*Davis*) [noting but declining to address split of authority on scope of "reports" and "complaints" under section 3303, subdivision (g)].)

Most recently, in *City of Santa Ana*, *supra*, 13 Cal.App.5th 317, the Fourth District Court of Appeal considered the same question of statutory interpretation presented by this appeal. Two police officers were investigated

15

for alleged misconduct which occurred during the execution of a search warrant at a marijuana dispensary. (*Id.* at pp. 321-322.) Unbeknownst to the officers, hidden cameras had recorded them during the search. (*Id.* at p. 322.) After certain portions of the recordings were released to the media by the dispensary owners, an investigation was initiated and both officers were interrogated. (*Id.* at pp. 322-323.) Additional portions of the recordings were subsequently obtained, and the officers were notified that they would be re-interrogated concerning the newly acquired recordings. (*Id.* at p. 323.) The officers' request for discovery materials prior to the second interrogations was rejected. (*Ibid.*) The officers then filed suit in superior court, alleging in part that the refusal to produce discovery under section 3303, subdivision (g) was a violation of POBRA.[6] (*Id.* at pp. 323, 326.) The trial court sustained the city's demurrer without leave to amend with respect to both causes of action. (*Id.* at p. 323.)

The appellate court reversed on the POBRA claim, noting that subdivision (g) of section 3303 "plainly states" with respect to any tape recording of the first interrogation that " 'the public safety officer shall have access to the tape . . . prior to any further interrogation at a subsequent time.' " (*Id.* at p. 327, italics omitted.) Since the police officers had not been provided these tape recordings, their complaint stated a cause of action under POBRA on this basis alone. (*Ibid.*)

As for the disclosure of reports and complaints, the appellate court acknowledged that section 3303, subdivision (g) " 'does not specify when an officer's entitlement to the reports and complaints arises.' " (*City of Santa Ana, supra*, 13 Cal.App.5th at p. 327.) Citing *City of Pasadena*, the court

---

[6] The officers also asserted a statutory privacy claim that the appellate court ultimately concluded was not cognizable. (*City of Santa Ana, supra*, 13 Cal.App.5th at pp. 324-326.)

16

noted that the Supreme Court had found that copies of tape recordings and transcribed notes of the first interrogation must necessarily be provided after the interrogation, the disclosure requirement for reports and complaints was located in the same sentence as the disclosure requirement for stenographer's notes, and the Court had remarked that the discovery rights to " 'copies of reports and complaints and transcribed stenographer's notes after the interrogation' " were " 'coextensive'." (*Id.* at p. 328.) The appellate court thus concluded: "Because discovery rights to reports and complaints are coextensive with discovery rights to tape recordings of interrogations, and tapes recordings must be produced 'prior to any further interrogation,' then it follows that reports and complaints also must be produced 'prior to any further interrogation.' " (*Id.* at p. 328.) We respectfully disagree with this analysis for the reasons set forth below.

II.     Timing of Disclosures Mandated by Section 3303, Subdivision (g)

" 'The fundamental rule of statutory construction is that a court should ascertain the intent of the Legislature so as to effectuate the purpose of the law.' " (*Upland Police Officers Assn. v. City of Upland* (2003) 111 Cal.App.4th 1294, 1303 (*City of Upland*).) "Because the statutory language is generally the most reliable indicator of legislative intent, we first examine the words themselves, giving them their usual and ordinary meaning and construing them in context." (*Esberg v. Union Oil Co.* (2002) 28 Cal.4th 262, 268, superseded by statute on other grounds as stated in *Bernard v. City of Oakland* (2012) 202 Cal.App.4th 1553, 1561 at fn. 5.) We are required to read a statute's provisions "as a whole" and to "harmoniz[e] 'statutes or statutory sections relating to the same subject . . . both internally and with each other, to the extent possible.' " (*City of Pasadena, supra,* 51 Cal.3d at p. 575.)

17

" '[S]tatutes must be construed so as to give a reasonable and common-sense construction consistent with the apparent purpose and intention of the lawmakers—a construction that is practical rather than technical, and will lead to wise policy rather than mischief or absurdity. [Citation.] In approaching this task, the courts may consider the consequences which might flow from a particular interpretation and must construe the statute with a view to promoting rather than defeating its general purpose and the policy behind it.' " (*City of Upland*, *supra*, 111 Cal.App.4th at p. 1303.) When " 'the language permits more than one reasonable interpretation, . . . the court looks "to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." ' " (*S.B. Beach Properties v. Berti* (2006) 39 Cal.4th 374, 379.)

### A. Disclosure of Reports and Complaints Before a Subsequent Interrogation is Not Required by Plain Meaning of Subdivision (g)

Subdivision (g) of section 3303 permits the "complete interrogation of a public safety officer" to be recorded by the investigating agency as well as by the officer through a personal recording device. The provision then states: "If a tape recording is made of the interrogation, the public safety officer shall have access to the tape if any further proceedings are contemplated or prior to any further interrogation at a subsequent time. The public safety officer shall be entitled to a transcribed copy of any notes made by a stenographer or to any reports or complaints made by investigators or other persons, except those which are deemed by the investigating agency to be confidential."

There is only one express timing directive in this statutory language—namely, a police officer whose interrogation has been recorded must be granted access to that recording "if any further proceedings are contemplated

18

or *prior to* any further interrogation at a subsequent time." (§ 3033, subd. (g), italics added; see *City of San Diego*, *supra*, 98 Cal.App.4th at p. 785 [noting that "[t]he express mention in section 3303, subdivision (g) of the tape recording of an officer's interview covers the distinct mandate that requires *a single category of material* (any tape recording of the first interview of the accused officer) be provided *before* the officer may be re-interviewed," some italics added].) In contrast, the plain language of the statute "does not specify when an officer's entitlement to the reports and complaints arises." (*City of Pasadena*, *supra*, 51 Cal.3d at p. 575; see also *Gilbert*, *supra*, 130 Cal.App.4th at pp. 1292-1293 [same].)

The discovery obligation for the other three types of material—stenographer's notes, reports, and complaints—is contained in the next sentence and does not provide a time frame for disclosure. As the Supreme Court observed, the phrase "prior to" is absent from this sentence, a notable omission given that when the Legislature wanted certain acts described in section 3303 to take place before an interrogation, it used the words " 'prior to.' " (*City of Pasadena*, *supra*, 51 Cal.3d at p. 576 ["When the Legislature 'has employed a term or phrase in one place and excluded it in another, it should not be implied where excluded.' "].) Applying this statutory canon, it is apparent that the Legislature did not intend to establish a post-interrogation deadline for the disclosure of "reports or complaints" as it had in the preceding sentence for tape recordings "prior to any further interrogation." (§ 3303, subd. (g); see *City of San Diego*, *supra*, 98 Cal.App.4th at p. 785 [opining that the maxim *expressio unius est exclusio alterius* "would support the claim that City need not provide [the other three] categories of materials *before* re-interviewing an officer"].)

19

*City of Santa Ana* concluded that because certain discovery materials (tape recordings and stenographer notes) can only be produced following an initial interrogation, all four types of materials should be treated in like manner and disclosed at the same time after the initial interrogation. (*City of Santa Ana, supra,* 13 Cal.App.5th at p. 328.) The appellate court relied in particular on the Supreme Court's conclusion that discovery rights for these materials were " 'coextensive'." (*Ibid*.) In our view, however, the Supreme Court's characterization of these discovery obligations as "coextensive" pertained to the narrow issue before the Court—whether certain discovery materials must be disclosed prior to an initial interrogation when other materials logically cannot be. *City of Pasadena* should not be overread to mean that subdivision (g)'s discovery obligations following an initial interrogation were meant to operate in lockstep. A plain reading of the statute does not support this construction, and it ignores the Supreme Court's own analysis of the omitted phrase 'prior to' in that portion of subdivision (g) discussing the disclosure of "reports and complaints."

The plain language of subdivision (g) thus establishes only that a police officer is entitled to nonconfidential stenographer's notes, reports, and complaints "[w]hen [the officer] is under investigation and subjected to interrogation . . . that could lead to punitive action"—that is, at *some point* during the investigation. (See *City of Pasadena, supra,* 51 Cal.3d at p. 575 [noting that subdivision (g) "defines only disclosure requirements incident to an *investigation*; it does not address an officer's entitlement to discovery in the event he or she is administratively *charged* with misconduct"].)

The question remains, when should such materials be discovered? One appellate court concluded that, since subdivision (g) "does not specify any time frame for disclosure," . . . "a reasonable, post-interrogation time frame

20

is implied." (*Gilbert*, *supra*, 130 Cal.App.4th at p. 1293.) Another court opined that, while the statute supports the conclusion that only the tape recording of the first interview must be provided before an accused officer is re-interviewed, it does not support a claim that an agency "need *never* provide other types of materials to an accused officer." (*City of San Diego*, *supra*, 98 Cal.App.4th at p. 785.) In its appellate briefing, the City contends that "the commencement of [a] formal disciplinary hearing[]" is a reasonable deadline to disclose "reports and complaints" against an officer, *i.e.*, at the end of the agency's investigation. Amici curiae join in this view.

As we explain next, we conclude the statutory language and legislative history of subdivision (g) offer a different answer, one based on the investigating agency's statutory right to withhold certain materials it deems confidential from disclosure.[7]

### B. *Confidentiality as the Touchstone for Disclosure of Subdivision (g) Discovery Materials*

Under the statute, an agency's disclosure obligations extend only to *nonconfidential* stenographer's notes, reports, and complaints. (§ 3303, subd. (g) ["The public safety officer shall be entitled to a transcribed copy of any notes made by a stenographer or to any reports or complaints made by investigators or other persons, *except those which are deemed by the investigating agency to be confidential*," italics added]; see also *Gilbert*, *supra*,

---

[7] We recognize that a blanket rule permitting all notes, reports, and complaints to be held until the end of the investigation would be both predictable and convenient for investigating agencies. However, nothing in the statutory language supports this construction of section 3303, subdivision (g). Given the balance the Legislature was attempting to strike between a fair process for officers entitled to disclosable materials and a robust investigation, we see no basis for allowing an agency to withhold nonconfidential materials for reasons of convenience.

130 Cal.App.4th at p. 1290 [subdivision (g) "empowers the investigating agency to deem reports confidential and excepts items so designated from the agency's disclosure obligation"].) Moreover, the broad statutory language of subdivision (g) places no express restrictions on an investigating agency's power to designate stenographer's notes, reports, and complaints as confidential. (See *ibid.* [noting that nothing in subdivision (g) "limits an investigating agency's power to designate reports confidential to materials protected by statutory privilege"].) Thus, an investigating agency may deem such materials confidential if it finds that doing so satisfies a statutory basis for confidentiality (e.g., Evid. Code § 1040-1041), or if disclosure would otherwise interfere with an ongoing investigation.[8] Furthermore, nothing in section 3303 prohibits an agency from de-designating a record previously deemed confidential when the basis for confidentiality no longer exists, such as the end of the investigation or some other circumstance.

Under this construction of subdivision (g), and consistent with *City of Pasadena*, no materials identified in subdivision (g) may be disclosed prior to an initial interrogation of a peace officer. Thereafter, any tape recording made of the interrogation must be disclosed "if any further proceedings are contemplated or prior to any further interrogation at a subsequent time." (§ 3033, subd. (g).) Stenographer's notes, reports, and complaints should also be

---

[8] Related statutory provisions recognize the need for confidentiality of records to protect an ongoing investigation. (See, e.g., Pen. Code § 832.7, subd. (b)(7)(C) [delaying public disclosure of peace officer personnel records related to discharge of a firearm or use of force incident involving death or great bodily injury "until the investigating agency determines whether the use of force violated a law or agency policy"]; subd. (b)(1)(B) & (C) [limiting public disclosure of records regarding other incidents to those "in which a sustained finding was made by any law enforcement agency or oversight agency"].)

22

disclosed upon request unless the investigating agency designates any such material as confidential to protect the integrity of an ongoing investigation.

For example, there appears to be no reason why stenographer's notes related to a taped interrogation that was disclosed to the public safety officer would need to remain confidential from that officer. Here, the City disclosed the tapes and transcribed notes of the initial interrogations to each of the Doe Officers in this case upon request but cautioned that the materials could not be shared among the officers. It is thus conceivable that an investigating agency might deem it necessary to withhold the recordings and stenographer's notes of other officer interrogations or witness interviews from an officer under investigation during an active investigation to preserve the confidentiality of those discussions. Reports and complaints might also be withheld if disclosure would reveal confidential sources or other sensitive information. If, however, punitive action is contemplated at the conclusion of an investigation, the agency must decide whether to de-designate and disclose any confidential materials to the officer or decline to bring misconduct charges on the basis of those materials. (See *Gilbert*, *supra*, 130 Cal.App.4th at pp. 1280, 1290.)

Even if punitive action is not pursued at the end of an investigation, the designation of material as confidential carries other consequences. Under subdivision (g), "No notes or reports that are deemed to be confidential may be entered in the officer's personnel file." This provision suggests that "the employing department may not make adverse personnel decisions concerning the officer based on reports, or the portions thereof, deemed confidential and not made available to the officer." (*Gilbert*, *supra*, 130 Cal.App.4th at p. 1290.) Other POBRA provisions support this view. (See § 3305 [adverse comment may not be added to peace officer's personnel file without review

and acknowledgement by the officer]; § 3306 [affording officer thirty days to file written response to any adverse comment entered in personnel file].)

We are aware that prior cases have found a police officer's right to view adverse comments under section 3305 broadly applicable, even in the face of an assertion of confidentiality by the investigating agency. (See *County of Riverside v. Superior Court* (2002) 27 Cal.4th 793; *Sacramento Police Officers Assn. v. Venegas* (2002) 101 Cal.App.4th 916; *Seligsohn v. Day* (2004) 121 Cal.App.4th 518.) These cases are distinguishable because they arose in the context of police officers requesting access to investigative records and complaints under sections 3305 and 3306 *after* the investigations had ended and no further action was taken. Animating these court decisions was the unfairness in allowing law enforcement agencies to maintain undisclosed allegations in a separate confidential file with potential consequence for future personnel decisionmaking. (See *Riverside*, *supra*, 27 Cal.4th at pp. 796-797, 799.)

That is not the situation here. For the confidentiality clause in subsection (g) of section 3303 to apply, an officer must be "under investigation and subjected to interrogation" (§ 3303), and must therefore be informed "of the nature of the investigation prior to any interrogation" (*id,* subd. (c)). To harmonize these provisions, we conclude that an officer's review and comment rights under sections 3305 and 3306 do not extend to review of materials temporarily deemed confidential by an agency under section 3303 for purposes of an active investigation. Nothing in this opinion is meant to absolve an investigating agency from compliance with those statutes once the investigatory period has ended.

24

## C.   *Section 3303's Legislative History Supports This Construction*

An examination of section 3303, subdivision (g)'s legislative history further confirms that the Legislature intended for the confidentiality provision to serve as a counterpoint to an agency's disclosure obligations. Balanced against the public safety officer's disclosure rights under subdivision (g) is the broad latitude given to an investigating agency to declare otherwise discoverable materials confidential so as to ensure the efficacy and integrity of police misconduct investigations.

As originally introduced on December 19, 1974, then-subdivision (f) of section 3303 provided in relevant part:  "The complete interrogation of a public safety officer shall be recorded and there shall be no unrecorded questions or statements.  If a tape recording is made of the interrogation, the public safety officer shall have access to the tape if any further proceedings are contemplated or prior to any further interrogation at a subsequent time. The public safety officer shall be entitled to a transcribed copy of any notes made by a stenographer or to any reports made by investigators."  (Assem. Bill No. 301 (1975-1976 Reg. Sess.) as introduced Dec. 19, 1974 at p. 3 (A.B. 301).)  The bill as initially proposed broadly authorized the disclosure of stenographer's notes and investigator's reports to public safety officers under investigation, but it did not provide any basis for investigating agencies to protect the integrity of their investigations by withholding sensitive information.

Opposition to A.B. 301 focused on the bill's negative impact on internal affairs investigations.  (See Rodney J. Blonien, Cal. Peace Officers' Assn. & Cal. District Attorneys' Assn. & Cal. State Sheriff's Assn., letter to Assemblyman Keysor, Apr. 18, 1975 [A.B. 301 "in its present form would significantly hinder law enforcement agencies in conducting internal affairs

25

investigations and citizen complaints against law enforcement officers. The constraints this bill imposes would be detrimental to the protection of society and to the law enforcement profession as a whole."]; Sen. Democratic Caucus, 3d. Reading File of Assem. Bill 301 (1975-1976 Reg. Session) as amended on June 4, 1975 [noting as arguments in opposition that the bill "inhibits law enforcement agency in ascertaining criminal violations of peace officers" and "may inhibit confidential sources reporting against police [by] allowing rights to any reports made by investigators"].) As the Assembly's Third Reading Report summarized: "This bill is opposed by most major law enforcement organizations largely because it imposes what many feel are excessive or unrealistic restrictions on law enforcements' ability to supervise and, when necessary, discipline its members." (A.B. 301, Assem. 3d Reading Report of bill as amended June 4, 1975.)

The proposed subdivision was then amended in August 1975 to mandate recording of interrogations only "where practical" and to limit disclosures to public safety officers as follows: "The public safety officer shall be entitled to a transcribed copy of any notes made by a stenographer or to any reports made by investigators, *except those which are deemed by the agency to be confidential. No notes or reports which are deemed to be confidential may be entered in the officer's personnel file*." (A.B. 301, as amended Aug. 25, 1975 at p. 18.) A final amendment in August 1976 made recording of interrogations discretionary and expanded the materials subject to disclosure. As adopted, the subdivision read in relevant part: "The complete interrogation of a public safety officer *may* be recorded. . . . The public safety officer shall be entitled to a transcribed copy of any notes made by a stenographer or to any reports *or complaints* made by investigators *or other persons*, except those which are deemed by the *investigating* agency to

26

be confidential.  No notes or reports which are deemed to be confidential may be entered in the officer's personnel file." (A.B. 301, as amended in conference Aug. 12, 1976 at p. 4.; see also Stats 1976, ch. 465, §1.)

As the legislative history demonstrates, by granting investigating agencies the authority to withhold confidential materials, the Legislature intended to strike a balance between a police officer's entitlement to relevant discovery and the agency's ability to supervise its employees effectively and to safeguard the integrity of its internal investigations.  Indeed, even as the Legislature amended A.B. 301 to include the confidentiality provision, it added a further protection for peace officers by forbidding confidential materials to be entered into a personnel file.  Thus, under our reading of subdivision (g), the timing of post-interrogation disclosure of notes, complaints, and reports against a peace officer is guided by an investigating agency's exercise of its discretion to designate certain materials as confidential in furtherance of its investigative objectives and to release nonconfidential materials upon request of the officer under investigation.[9]

---

[9] In supplemental briefing, petitioners contend that the confidentiality clause was added to address a concern raised by opponents of A.B. 301 who argued that the bill "may inhibit confidential sources reporting against police [by] allowing rights to any reports made by investigators." (Sen. Democratic Caucus, 3d Reading File Assem. Bill 301 (1975-1976 Reg. Session) as amended on June 4, 1975.)  Petitioners thus argue that confidentiality should be limited to protecting confidential sources.  This claim ignores the first sentence of the committee report which discusses more generalized opposition that the legislation as drafted "inhibits [a] law enforcement agency in ascertaining criminal violations of peace officers." (*Ibid.*)  Nothing in the broad language of the statute or this legislative history suggests that the confidentiality clause was intended to operate so narrowly.

### D. Consistency With POBRA

As stated above, we must construe a statute " 'with a view to promoting rather than defeating its general purpose and the policy behind it.' " (*City of Upland*, *supra*, 111 Cal.App.4th at p. 1303.) We reject a construction of section 3303, subdivision (g), which would automatically require disclosure of reports and complaints "prior to any further interrogation at a subsequent time." (§ 3303, subd. (g).) Such an interpretation is not required by the language of subdivision (g), and as we explain now, it undermines a core objective under POBRA of fostering public confidence in our law enforcement agencies. On the other hand, a reading of subdivision (g) which requires disclosure of nonconfidential materials upon request while permitting an investigating agency to withhold confidential materials during an investigation strikes the proper balance between "fundamental fairness for police officers" and "the necessity for internal affairs investigations to maintain the efficiency and integrity of the police force serving the community." (*City of Pasadena*, *supra*, 51 Cal.3d at p.572.)

As *City of Pasadena* explained, while many of the protections in POBRA resemble those available in a criminal investigation, the Legislature recognized that investigating agencies must be afforded broad latitude when investigating suspected officer misconduct. (*City of Pasadena*, *supra*, 51 Cal.3d at p. 577.) The Court concluded that preinterrogation discovery was "not essential to the fundamental fairness of an internal affairs investigation," and, indeed, was "without precedent." (*Id.* at p. 578.) In this case, requiring the disclosure of reports and complaints during an active investigation of officer misconduct would similarly represent a significant expansion of police officers' POBRA rights as compared to the discovery rights afforded criminal defendants. (*Id.* at p. 577.) And, like the Supreme

28

Court in *City of Pasadena*, we see no reason such a broad reading of subdivision (g) would be "essential to the fundamental fairness of an internal affairs investigation." (*Id.* at p. 578.)

Indeed, mandating such discovery prior to the subsequent interrogation of an officer could severely hamper the agency's investigation, and therefore undermine the public's confidence in the integrity of the law enforcement agency. "Underlying every administrative inquiry into suspected officer misconduct is the obligation of the law enforcement agency to assure public confidence in the integrity of its officers. The purpose of the inquiry is to determine whether there is any truth to the allegations of misconduct made against an officer and, if so, whether to commence disciplinary proceedings." (*City of Pasadena*, *supra*, 51 Cal.3d at p. 578.) Granting premature discovery during an investigation could "frustrate the effectiveness" of the investigation, thereby impairing "the reliability of such a determination and the effectiveness of the agency's efforts to police itself." (*Id.* at pp. 578-579.)

For example, disclosures made before a subsequent interrogation "might color the recollection of the person to be questioned or lead that person to conform his or her version of an event to that given by witnesses already questioned." (*Id.* at p. 579; see *Davis*, *supra*, 22 Cal.App.5th at p. 1134 [noting preinterrogation disclosure "might hamper the investigation by allowing the officer being investigated to craft answers that fit or explained the evidence"].) In addition, "[d]uring an interrogation, investigators might want to use some of the information they have amassed to aid in eliciting truthful statements from the person they are questioning. Mandatory preinterrogation discovery would deprive investigators of this potentially effective tool." (*City of Pasadena*, *supra*, 51 Cal.3d at p. 579.) Simply put,

disclosing "crucial information about an ongoing investigation" prior to interrogation "would be contrary to sound investigative practices." (*Ibid.*)

The Supreme Court's observations in *City of Pasadena* apply with equal force under the circumstances of this appeal. The CPRA is a civilian oversight agency with independent authority to investigate claims of police misconduct in the City of Oakland. (See generally, Oakland City Charter, §604). As the City points out, "the CPRA's very existence is consonant with POBRA's purpose to improve the public's confidence in Oakland's police force." To require an independent investigative agency to disclose notes, reports or complaints in its possession before it can interrogate police officers itself would hamstring investigators by allowing officers to alter their testimony in light of the disclosures, casting doubt on the integrity and seriousness of the investigation.

Such concerns are magnified in situations, such as here, where the CPRA disagreed with the Department's internal investigation and found significant discrepancies in the testimony of the various Doe officers.[10] These alleged discrepancies may not have materialized, and other avenues of investigation left undeveloped, had the CPRA been required to disclose the requested materials under the rule announced by the *City of Santa Ana* court. The Supreme Court's admonition in *City of Pasadena* bears repeating: "Nothing can more swiftly destroy the community's confidence in its police force than its perception that concerns raised about an officer's honesty or integrity will go unheeded or will lead only to a superficial investigation." *City of Pasadena, supra,* 51 Cal.3d at p. 568.)

---

[10] We express no opinion on the allegations made against the Doe Officers, who have not had an opportunity to contest any charges against them.

In sum, we conclude that requiring reports and complaints to be provided to a police officer under subdivision (g) of section 3303 "prior to any further interrogation" is inconsistent with the plain language of section 3303, subdivision (g), and undercuts a core purpose of POBRA of ensuring that investigations into officer misconduct are conducted with the seriousness, diligence, and fairness that is required of these positions of public trust. Instead, we conclude that tying the disclosure of reports and complaints to the confidential nature of these materials will protect the integrity and effectiveness of such investigations while allowing police officers prompt access to all materials to which they are entitled under section 3303, subdivision (g).

Constrained by the *City of Santa Ana* decision, the trial court below determined that the City was required to provide relevant reports and complaints to the Doe Officers "prior to any further interrogation at a subsequent time" (§ 3303, subd. (g)). In light of our disagreement with *City of Santa Ana*, we reverse the judgment below. The record indicates that the materials at issue were withheld " 'on advice of counsel.' " Therefore, it is unclear whether the City might have sought to withhold the requested materials for reasons of confidentiality under section 3303, subdivision (g).

On remand, the trial court shall determine whether the City had a basis for withholding otherwise discoverable reports and complaints due to their confidential nature as that concept is explained herein. Petitioners must demonstrate that the City had a present duty under section 3303, subdivision (g), to disclose the requested materials to establish entitlement to mandamus relief. (See *Gilbert*, *supra*, 130 Cal.App.4th at p. 1291.) Should disciplinary proceedings be commenced or resumed, the City may not make adverse personnel decisions concerning the Doe Officers based on any

31

confidential materials, or the portions thereof, that have not been de-designated and made available to the Doe Officers.

## DISPOSITION

The judgment and writ of mandate are vacated, and the matter is remanded to the trial court to fashion new relief consistent with this opinion. City is entitled to its costs on appeal.

_____

SANCHEZ, J.


We concur.


_____

HUMES,  P.J.


_____

MARGULIES, J.


(A158662)

Alameda County Superior Court

The Honorable Frank Roesch

Counsel:

Barbara J. Parker, City Attorney, Ryan Richardson, Special Counsel, Jennifer Logue, Supervising City Attorney, Hanson Bridgett, Adam Hofmann for Defendant and Appellant.

Rains, Lucia Stern St Phalle & Silver, Zachery A. Lopes and Timothy Talbot for Plaintiffs and Respondents.

Liebert Cassidy Whitmore, J. Scott Tiedemann, Alex Y. Wong for League of California Cities and Los Angeles County Police Chief's Association as Amicus Curiae on behalf of Defendant and Appellant.