Filed 2/9/26  Barney v. Girn CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CARL BARNEY, as Trustee, etc., et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> RAMANDEEP GIRN et al., <br><br> Defendants and Appellants. | G064412 <br><br> (Super. Ct. No. 30-2018-01006531) <br><br> O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Erick L. Larsh, Judge. Reversed and remanded.

Holmes, Athey, Cown & Mermelstein, Mark Mermelstein and Joel M. Athey for Defendants and Appellants.

Jackson Lewis, James P. Carter, Jonathan P. Schmidt, Kelli M. Dreger and Dylan B. Carp for Plaintiffs and Respondents.

\*          \*          \*

This lawsuit involves shareholders and former officers of LePort Educational Institute, Inc. (LEI), which previously operated Montessori schools across the country. The primary participant on one side is Carl Barney as an individual and as trustee of the Carl Barney Living Trust (collectively, Barney). Barney is LEI's largest secured creditor and is also a shareholder. The main litigants on the other side are Dr. Peter LePort (Dr. LePort), who is LEI's founder and current chairperson and chief executive officer (CEO), and Ramandeep (known as Ray) and Rebecca Girn, who are LEI shareholders and former officers.[1]

Barney obtained an assignment (the assignment) purportedly approved by LEI's board of directors (the board), which assigned to him LEI's claims against various parties. Under the assignment, Barney alleged claims on LEI's behalf against Dr. LePort, the Girns, and other LEI shareholders and former officers (the defendants). The Girns cross-complained against Barney and LEI. This led to a struggle between Barney and Dr. LePort—who was allegedly working with the Girns—to control LEI's defense of these cross-claims. Barney claimed authority to control LEI's defense under the assignment, while Dr. LePort claimed authority as LEI's chairperson and CEO. Barney and Dr. LePort each hired different attorneys to represent LEI, and these attorneys began interfering with each other's filings.

Barney moved for a preliminary injunction to prevent Dr. LePort, the Girns, and others from interfering with any filings he made on LEI's behalf (the preliminary injunction motion). The Girns opposed the motion. After briefing had finished, Louis Shoch, the attorney Dr. LePort had hired to represent LEI, filed a declaration presenting a new argument. Shoch claimed

---

[1] We refer to Ray and Rebecca individually by their first names to avoid confusion, and we refer to them collectively as the Girns.

the assignment was invalid because it had not been properly approved by the board under Corporations Code section 307, subdivision (a)(8).[2] Specifically, the assignment had not been approved by a majority of the directors who had attended the meeting where it was considered. Shoch presented evidence that four directors had attended this meeting. Two of them recused themselves from voting on the assignment, while the other two directors voted in its favor. Since two is not a majority of four, Shoch argued the assignment had not been validly approved by the board under section 307, subdivision (a)(8).

The trial court rejected Shoch's untimely argument on the merits and issued a preliminary injunction in Barney's favor (the preliminary injunction order). It found that only a majority of the directors *voting*—not a majority of the directors *present* at the meeting—was required to approve the assignment. Since the two voting directors had both voted in favor of the assignment, the court found it had been validly approved by the board.

On appeal, the Girns challenge the preliminary injunction order on the same grounds as Shoch below: for the board to approve the assignment, a majority of the directors present at the relevant board meeting had to vote in favor of it. Since only two of the four directors voted for it, they contend the assignment was not properly approved by the board under section 308, subdivision (a)(8). We agree. However, since this argument was untimely raised below, the trial court was unable to address any of Barney's counterarguments as to why the assignment remains valid. We cannot resolve these many arguments on appeal because they involve issues of fact for the trial court to resolve. Thus, we reverse the preliminary injunction order and remand the matter for further proceedings.

_____

[2] Further undesignated references are to the Corporations Code.

FACTS AND PROCEDURAL HISTORY

I.

THE PARTIES AND THE ASSIGNMENT

LEI previously owned and operated several private Montessori schools in different states. It has sold all its former schools except for one. LEI was founded by defendant Dr. LePort in 2000, and he remains its chairperson and CEO.

Appellants, the Girns, are LEI shareholders. Ray was previously LEI's CEO and a member of the board. Rebecca was previously LEI's general counsel and secretary. There are several other defendants—primarily LEI shareholders and former officers—that are not involved in this appeal. Defendant Lukas Pieter was LEI's chief financial officer from October 2015 to December 2016. Dr. LePort's sister and son (collectively with Dr. LePort, the LePorts) are also defendants and LEI shareholders.

In August 2016, the board signed a Unanimous Written Consent (the consent agreement) to (1) enter an agreement in which respondent Barney would loan LEI $17 million and (2) amend LEI's articles of incorporation and bylaws (the bylaws). Under the consent agreement, Barney obtained the right to appoint four out of six directors on the board.[3] Barney is LEI's largest secured creditor and is also a shareholder.

In April 2018, LEI and Barney entered an agreement, in which LEI assigned Barney "all rights, interests, claims, demands, and remedies" it had or may have against the Girns and the LePorts (defined above as the assignment). The assignment allowed Barney to "prosecute the Claims in his individual name or on behalf of LEI and in its name in his sole discretion." It

---

[3] Barney initially sat on the board but resigned in December 2017.

4

further specified that Barney would "indemnify, defend and hold harmless LEI and its current officers, attorneys and directors, excluding [Dr. LePort]," from any lawsuits, claims, attorney's fees, or awards.[4]

The assignment was purportedly approved by the board at a meeting on April 24, 2018 (the April 24, 2018 meeting). When LEI entered into the assignment, the board's six directors were Dr. LePort, Jim Brown, Art Astorino, Lenny Esmond, Rony Miller, and Eric Juhlin.

## II.

### THE COMPLAINT AND CROSS-COMPLAINT

Barney filed this lawsuit in July 2018 solely against Pieter. He then filed a first amended complaint on behalf of himself and LEI, which added the LePorts as defendants. His second amended complaint added defendants the Girns and Higher Ground Education, Inc. (Higher Ground), a competitor of LEI that was allegedly owned and controlled by the Girns. Finally, in August 2021, Barney filed the operative third amended complaint (the complaint) on behalf of himself and LEI against Pieter, the LePorts, the Girns, and Higher Ground (defined above as the defendants).

Since this appeal only involves the Girns, we focus on the claims against them. The complaint alleged that the Girns had unlawfully conspired to form Higher Ground while still employed by LEI and had improperly solicited LEI employees to join Higher Ground. The complaint also asserted that the Girns had misappropriated LEI's trade secrets and proprietary

_____

[4] A few months prior, LEI and Barney had executed a similar agreement, in which LEI had assigned to Barney its claims against Pieter. This agreement also specified that Barney could prosecute any such claims individually or on LEI's behalf.

5

information. Based on these allegations, the complaint set forth various tort, contract, and statutory claims against the Girns.

The Girns filed a cross-complaint, which they amended several times. In July 2023, they filed the operative cross-complaint (the cross-complaint), which alleged both direct and derivative claims on LEI's behalf against LEI, Barney, Juhlin, Esmond, and Miller. Of relevance here, the Girns alleged several claims for indemnity against Barney based on the assignment.[5]

### III.

### THE STRUGGLE TO CONTROL LEI'S DEFENSE

After the cross-complaint's filing, a struggle arose between Barney and Dr. LePort to control LEI's defense of the Girns' cross-claims. In September 2023, Barney and LEI jointly filed a motion to strike portions of the cross-complaint (the motion to strike). They also filed a joint demurrer a few days later (the demurrer). Both filings specified that LEI was acting "by and through [Barney], its assignee." The motion to strike sought to strike allegations concerning the Girns' indemnity claims against Barney, while the demurrer argued the Girns' indemnity claims against him were meritless.

In the above filings, Barney was represented by Jackson Lewis P.C., and LEI was represented by Robinson & Robinson, LLP (the Robinson

---

[5] Specifically, the Girns alleged that the assignment required Barney "to indemnify LEI against any demands, lawsuits, proceedings, claims, costs, expenses, attorney's fees, awards or judgments filed or submitted to LEI by the former LEI employees . . . including the Girns." The Girns further claimed that LEI had agreed to indemnify them for fees and costs arising from this lawsuit. And, in furtherance of this agreement, LEI had allegedly assigned the Girns its right to indemnification from Barney under the assignment.

firm). The Robinson firm had filed a notice of appearance on LEI's behalf a day before filing the motion to strike.

About two weeks after the Robinson firm appeared in this lawsuit, the Girns sent a letter demanding that the Robinson firm withdraw the demurrer on LEI's behalf and cease representing LEI. The letter claimed that "there is no legal meaning to your statement that you are making your appearance 'by and through' Carl Barney as LEI's assignee." While the letter acknowledged the assignment, it asserted, "we are unclear as to why you believe you can purport to represent the assignor [(i.e., LEI)] as a cross-defendant. . . . [Y]our purported representation of LEI does not actually involve any agreement with LEI wherein LEI has agreed to be represented by your firm. In short, we understand . . . your purported representation of LEI is not authorized by LEI." The letter also claimed that the Robinson firm was "taking positions in this litigation that directly contradict the desires of LEI as articulated by . . . its Chairman and CEO Dr. Peter LePort."

The Robinson firm refused the above requests, stating it "represent[ed] LEI, through its assignee Carl Barney," and "Barney's authority to assert claims derives from the assignment, . . . not [Dr. LePort]."

In January 2024, Shoch filed a notice of appearance on LEI's behalf. LEI's retention of Shoch was authorized by Dr. LePort as its CEO and chairperson. Shoch then filed a notice withdrawing the demurrer and motion to strike on LEI's behalf, but he did not file an answer. As explained below, Barney believed Shoch's failure to file an answer was an attempt by Dr. LePort to cause LEI to default on the Girns' cross-claims.

A few days later, the Robinson firm, also purporting to act on LEI's behalf, filed a notice that LEI had not withdrawn the demurrer and motion to strike. The Robinson firm also objected to Shoch's notice of

7

appearance, explaining that Shoch was neither its cocounsel in this case, nor did he have authority to substitute the Robinson firm out of the case. Barney filed a notice of joinder to LEI's notice of nonwithdrawal and also objected to Shoch's appearance.

Around this time, Dr. LePort sent the Robinson firm a letter stating that the Robinson firm only represented Barney and not LEI. The letter claimed that LEI had retained Shoch. Thus, Dr. LePort demanded that the Robinson firm "immediately cease and desist from making any further representations to the Court and counsel claiming that your firm represents LEI."

The Girns filed an opposition to LEI's "UNAUTHORIZED DEMURRER TO THIRD AMENDED CROSS—COMPLAINT FILED BY ROBINSON & ROBINSON, LLP." (Boldface omitted.) They made substantive arguments but also claimed the demurrer should not be heard as to LEI because its true counsel" had withdrawn it. They likewise claimed the Robinson firm had "filed the Demurrer against LEI's wishes" (underlining & italics omitted), and that Barney was "hijacking LEI's right to counsel . . . to evade his indemnification obligations." The Girns later filed a "Notice of Withdrawal of Opposition to Withdrawn Demurrer of [LEI]." (Boldface omitted.) They requested the court take the demurrer off calendar as to LEI and only review their demurrer opposition as to Barney.

It is unclear whether the Girns filed an opposition to the motion to strike.

IV.

THE PRELIMINARY INJUNCTION MOTION

Due to the above struggle, Barney filed the preliminary injunction motion. He sought to prevent the LePorts and Girns "from

8

interfering with the defense of the crossclaims asserted against LEI in this action, and preventing them from withdrawing, tampering with, or interfering with any filing made by LEI, by and through [Barney] as its assignee, whether through [the Robinson firm] or any other counsel." Barney argued the assignment authorized him to prosecute all of LEI's claims against the defendants and to control LEI's defense of the Girns' cross-claims. He claimed Dr. LePort's retention of Shoch was interfering with these rights. He also alleged that Dr. LePort and the Girns had colluded to have LEI default on the Girns' cross-claims for indemnification after attempting to withdraw LEI's demurrer and motion to strike. The Robinson firm filed a notice of joinder on LEI's behalf.

The Girns opposed the preliminary injunction motion. Significantly, they did not contest the assignment's validity. Rather, they argued Barney was asserting rights outside the assignment's scope. In particular, they claimed the assignment did not grant Barney the unilateral right to retain and direct counsel on LEI's behalf.

After briefing had finished, the court issued a tentative ruling continuing the hearing on the preliminary injunction motion so it could be heard with the demurrer and the motion to strike. The tentative ruling stated that the preliminary injunction motion "largely turn[ed] on the interpretation" of the assignment. "The court's understanding is that [the Girns] *do not dispute the validity* of [the assignment], but do dispute its scope, particularly as to the extent to which Barney is authorized to hire counsel on behalf of LEI and/or direct its defense." (Italics added.) To aid its interpretation, the court ordered "the parties to provide copies of any corporate minutes authorizing [the] assignment." It also allowed them to file declarations concerning "the circumstances giving rise to the assignments,

9

and/or any nonprivileged discussions leading to execution of the assignments." But it specified that "[n]o further briefing is permitted."

Both sides submitted to the tentative ruling, and it was entered as the court's final ruling (the continuation order).

## V.

### DECLARATIONS SUBMITTED BY SHOCH

Two days before the trial court's deadline to submit the above documents, Shoch submitted declarations from himself (the Shoch declaration) and Dr. LePort. Despite the continuation order's prohibition on further briefing, Shoch used his declaration to argue—for the first time—that the assignment was invalid.

The Shoch declaration stated that on April 18, 2018, director Juhlin invited the five other directors to a special meeting to discuss approval of the assignment. The invitation to the meeting included a draft of the assignment. Four directors attended the meeting the next day: Dr. LePort, Juhlin, Brown, and Esmond. Absent from the meeting were directors Astorino and Miller. No vote was held on the assignment.

On April 23, 2018, Juhlin circulated an e-mail to all the directors, recommending their immediate approval of the assignment by e-mail vote. Juhlin sent a follow-up e-mail later that day stating that four of the six directors had approved the assignment (Juhlin, Brown, Esmond, and Miller), but the remaining directors (Astorino and Dr. LePort) would presumably vote against it. LEI's counsel then advised the directors that the assignment was valid only if approved at a board meeting or by unanimous written consent.

Since unanimous written consent was not obtained over e-mail, Juhlin e-mailed the entire board the next day at 7:44 a.m. He stated that "[w]e need to have a meeting to verbally vote on the [assignment]," and

10

suggested meeting later that day. At 2:00 p.m. that same day, the board held a meeting to vote on the assignment. Four of LEI's six directors attended: Esmond, Juhlin, Brown, and Miller. Neither Astorino nor Dr. LePort were present.

The Shoch declaration noted that according to the minutes for the April 24, 2018 meeting, "'[f]our of the six Directors of the Board of Directors were present at the meeting and therefore, a quorum existed.'" However, "LEI directors Lenny Esmond and Rony Miller recused themselves from voting on the [the assignment]. The two remaining directors present at the April 24, 2018 meeting, Eric Juhlin and Jim Brown, then held a vote and approved the [assignment]." The assignment was then executed on LEI's behalf by Esmond and Miller.

After giving this factual summary, the Shoch declaration asserted that under the bylaws and section 307, subdivision (a)(8), "a majority of the directors who constituted the required quorum for any Board of Directors meeting to take place must vote to approve any action on LEI's behalf." It continued, "LEI had six authorized Board members in April 2018. A majority of the authorized number of Board members (in this case four) was sufficient to constitute the required quorum to allow the April 24, 2018 meeting to take place. But if any of those four Board members who constituted the required quorum for that meeting recused themselves from a vote, then a majority of the original four Board members who constituted the required quorum for that meeting (rather than a majority of the members who voted on a resolution) had to approve any action for it to be a valid and enforceable act by LEI."

The Shoch declaration then opined that the assignment was invalid because it "was approved by only two members of the four-member

11

quorum required to hold the April 24, 2018 meeting, which is not a majority of that quorum." Because "the [assignment] was not properly approved by LEI's Board," it "was not a valid act taken by LEI" under the bylaws or section 307, subdivision (a)(8).

Dr. LePort's declaration provided additional testimony and documents supporting Shoch's opinion that the assignment had not been properly approved by the board.

## VI.

### THE PRELIMINARY INJUNCTION ORDER

At the preliminary injunction hearing, Barney emphasized that the assignment's validity had not previously been questioned by any party. He likewise noted that the Girns were suing him for indemnity based on the assignment. Barney asked the trial court to allow further briefing on the assignment's validity, if needed, "because we are being blindsided with this after over two years of litigating this issue."

The trial court partially granted the preliminary injunction motion. In the preliminary injunction order, it issued an injunction preventing the LePorts, the Girns, "and anyone acting on their behalf, from withdrawing, tampering with, or interfering with any filing made by LEI, by and through Mr. Barney as its assignee, whether through [the Robinson firm] or any other counsel."[6] In particular, the court found the assignment authorized Barney to hire counsel for LEI to prosecute claims against the

---

[6] The portion of the preliminary injunction motion that was denied is immaterial to this appeal, so we do not discuss it. We also note that the injunction became effective upon the posting of a $10,000 bond.

12

LePorts and Girns and to defend against any claims they brought against LEI.

Though Shoch's argument about the assignment's invalidity was untimely, the court rejected it on the merits. It explained, "To the extent that the supplemental declarations provided by LePort and Schoch contend that the 4-24-18 Assignment was invalid [which appears to the court to be the first time this contention has been raised in this action], they provide no evidence that Board members Esmond and Miller withdrew from the Board meeting; nor any authority that abstention from a specific vote amounts to withdrawal from a Board meeting."

The trial court continued, "Under California Corporations Code Section 307(a)(8), if a quorum of four is present and two members recuse themselves from voting, the remaining two members can still constitute a majority vote if they both agree on the matter being voted. This interpretation is supported by the general principle in corporate law that once a meeting is validly convened with a quorum, business can be transacted as long as the quorum is maintained, and any decisions made by the majority of those voting at the meeting are valid. Therefore, if four members constitute a quorum and two recuse themselves, the remaining two members can validly make decisions if they unanimously agree."

The trial court then analogized to the "CA Parliamentary Procedures." It explained that under these procedural rules, "when a member abstains from voting, they are still counted for purposes of determining whether there is a quorum, but their abstention votes on the motion are treated as if they do not exist (CA Parliamentary Procedures, App. G)[1] [*sic*]. This means that while the abstaining member is considered present for the purpose of establishing a quorum, their non-vote does not count towards the

13

majority needed to pass a motion." It made a similar analogy to "the regulation from 17 CCR § 60006."

The trial court concluded, "in a corporation board member vote, if a member recuses themselves from the vote, their presence is still counted toward establishing a quorum, but not toward the majority vote needed to pass a decision. Therefore, this Court finds that the two votes of the Board Members constituted a majority vote (2 of the 2 voting) when a quorum existed."

The trial court also ruled on the demurrer and the motion to strike the cross-complaint. While these rulings are not germane to this appeal, the court sustained the demurrer without leave to amend and granted the motion to strike in part and denied it in part.

On appeal, the Girns claim that the trial court wrongly issued a preliminary injunction in Barney's favor because the assignment is invalid for two reasons. First, they claim there was inadequate notice for the April 24, 2018 meeting, where the board voted on the assignment. Second, repeating Shoch's argument below, they contend there were insufficient votes at the April 24, 2018 meeting for the board to approve the assignment. We will generally refer to first contention as the inadequate notice argument and the second as the insufficient votes argument.

DISCUSSION

I.

WAIVER OF THE GIRNS' ARGUMENTS

Barney contends the Girns have waived both of the contentions they make on appeal. He claims the inadequate notice argument was not made below while the insufficient votes argument was untimely. We agree the former argument has been waived, but disagree on the latter.

14

*A. The Inadequate Notice Argument*

"'As a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal; appealing parties must adhere to the theory (or theories) on which their cases were tried. This rule is based on fairness—it would be unfair, both to the trial court and the opposing litigants, to permit a change of theory on appeal . . . .'" (*Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 997.) "'"Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider. . . . Bait and switch on appeal not only subjects the parties to avoidable expense, but also wreaks havoc on a judicial system too burdened to retry cases on theories that could have been raised earlier."'" (*Ibid.*)

Nothing in the record shows the Girns, or any party, argued below that the assignment was invalid because there was inadequate notice for the April 24, 2018 meeting. While the Shoch declaration contained testimony about the communications leading up to the April 24, 2018 meeting, it never argued the meeting was held on inadequate notice. Rather, Shoch only claimed the assignment was ineffective because it "was not validly approved by LEI because it was not approved by a majority of the directors who were required to constitute a quorum in order to hold the April 24, 2018 Board meeting."

Appellate courts have discretion to consider new legal arguments on appeal. (*Daneshmand v. City of San Juan Capistrano* (2021) 60 Cal.App.5th 923, 937.) But the inadequate notice argument raises factual questions as to when notice of the April 24, 2018 meeting was given. And it is unclear whether the relevant facts are undisputed since Barney was not given the chance to present any evidence or argument on this issue below.

15

Besides, even if the facts were undisputed, we are under no obligation to consider this argument. (*Ramirez v. Department of Motor Vehicles* (2023) 88 Cal.App.5th 1313, 1335.) The Girns have not explained why they failed to make it below or why it should be considered now. (See *Nellie Gail Ranch Owners Assn. v. McMullin, supra*, 4 Cal.App.5th at p. 997.) Thus, even if this argument involved undisputed facts, we would not exercise our discretion to consider it.

## B. The Insufficient Votes Argument

Similarly, Barney claims the Girns have waived the insufficient votes argument by failing to timely raise it below. While we agree the argument was untimely, we find it has not been waived because the trial court directly addressed it in the preliminary injunction order.

The insufficient votes argument was untimely made. As detailed above, the continuation order stated that the parties did "not dispute the validity of [the] assignment" and that "[n]o further briefing is permitted." Despite this, the Shoch declaration presented a new argument that the assignment was invalid because it had not been approved by the required majority of the directors at the April 24, 2018 meeting. This violated the court's order barring further briefing.

That said, we cannot ignore that the trial court directly addressed the insufficient votes argument in the preliminary injunction order. It found the board's approval of the assignment complied with section 307, subdivision (a)(8). Specifically, it ruled "that the two votes of the Board Members constituted a majority vote (2 of the 2 voting) when a quorum existed."

Trial courts have discretion to consider late arguments. (See *Juarez v. Wash Depot Holdings, Inc.* (2018) 24 Cal.App.5th 1197, 1201–1202;

16

*Alliant Ins. Services, Inc. v. Gaddy* (2008) 159 Cal.App.4th 1292, 1307–1308.) Here, the lower court unquestionably exercised its discretion to consider the insufficient votes argument by expressly rejecting it in the preliminary injunction order. Thus, we find the argument has not been waived for purposes of this appeal.

II.

THE PRELIMINARY INJUNCTION ORDER

A.  *Standard of Review*

"The usual standard of review for the granting or denial of a preliminary injunction is the abuse of discretion standard of review." (*Upland Police Officers Assn. v. City Of Upland* (2003) 111 Cal.App.4th 1294, 1300.) Here, however, our review centers on the court's interpretation of section 307, subdivision (a)(8) and the bylaws. "[W]hen review of a preliminary injunction involves purely a question of law or statutory interpretation, the standard of review is de novo." (*Millennium Rock Mortgage, Inc. v. T.D. Service Co.* (2009) 179 Cal.App.4th 804, 808–809.) Likewise, questions concerning the interpretation of an entity's bylaws are reviewed de novo. (*Concord Christian Center v. Open Bible Standard Churches* (2005) 132 Cal.App.4th 1396, 1407–1408.)

B.  *The Board's Approval of the Assignment*

The Girns argue the assignment is invalid because it was not properly approved by the board under the bylaws or section 307, subdivision (a)(8). Specifically, they contend the assignment had to be approved by either (1) a majority of the directors present at the April 24, 2018 meeting, or (2) if any directors withdrew from the meeting, a majority of the required quorum for the meeting. Under either scenario, the Girns claim at least three directors had to vote in favor of the assignment. Since only two directors

17

voted for it, the Girns contend the assignment was not properly approved by the board and is invalid. We agree there were insufficient votes for the board to approve the assignment.

     *1. The bylaws and applicable law*

     The bylaws authorize six directors for the board and specify that LEI's "business and affairs . . . shall be managed and all corporate powers shall be exercised by or under the direction of the [board]." Under the bylaws, "A majority of the authorized number of directors constitutes a quorum of the [board] for the transaction of business . . . . Every act or decision done or made *by a majority of the directors present* at a duly held meeting at which a quorum is present will be regarded as the act of the [board], subject to the provisions of Section 310, 311 and 317( e) of the California Corporations Code . . . ." (Italics added.) "A meeting at which a quorum is initially present may continue to transact business, notwithstanding the withdrawal of directors, if any action taken is approved by at least *a majority of the required quorum for that meeting* or by such greater number, if any, required by the California General Corporation Law . . . ." (Italics added.)

     The above bylaws use the same language as section 307, subdivision (a)(7) and (8). The former subdivision states that "[a] majority of the authorized number of directors constitutes a quorum of the board for the transaction of business." (§ 307, subd. (a)(7).) Section 307, subdivision (a)(8) then provides, "An act or decision done or made by *a majority of the directors present* at a meeting duly held at which a quorum is present is the act of the board . . . . A meeting at which a quorum is initially present may continue to transact business notwithstanding the withdrawal of directors, if any action taken is approved by at least *a majority of the required quorum for that meeting*." (Italics added.)

18

Since these bylaws contain the same language as section 307, subdivision (a)(7) and (8) and expressly reference the Corporations Code, we can reasonably infer that they are intended to mirror the standards contained in this subdivision. (See Civ. Code, § 1636.) We also note that neither party disputes that the bylaws were intended to incorporate the text of section 307, subdivision (a)(7) and (8). As such, we will base our analysis on this statutory subdivision.

The goal of statutory interpretation "'is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.' [Citation.] We begin as always with the statute's actual words, the 'most reliable indicator' of legislative intent, 'assigning them their usual and ordinary meanings, and construing them in context. If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs. On the other hand, if the language allows more than one reasonable construction, we may look to such aids as the legislative history of the measure and maxims of statutory construction.'" (*Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 837–838.)

### 2. *Applying section 307, subdivision (a)(8)*

It is undisputed that the April 24, 2018 meeting began with a quorum of four directors before Esmond and Miller recused themselves from voting on the assignment. There is some dispute as to whether their recusal broke quorum. If all four directors were still "present" for the vote, the assignment would need to be approved by a majority of the directors present. (§ 307, subd. (a)(8).) However, if Esmond and Miller's recusal was a "withdrawal" from the April 24, 2018 meeting, the assignment would need to be approved by a majority of the required quorum for the meeting. (§ 307,

19

subd. (a)(8.)) We need not determine which scenario applies, because the result is the same either way.

As to the first scenario, the statute provides that "[a]n act or decision done or made by *a majority of the directors present* at a meeting . . . is the act of the board . . . ." (§ 307, subd. (a)(8), italics added.) Four directors attended the April 24, 2018 meeting. If all four directors remained "present" for the vote, then a majority of them, i.e., three directors, had to vote in favor of the assignment to obtain the board's approval. (Cambridge Dict. Online (2025) <https://dictionary.cambridge.org/dictionary/english/majority> [as of Dec. 9, 2025], archived at https://perma.cc/MNH5-LGY6 [a "majority" means "more than half of a total number or amount"]; see, e.g., *People v. Walker* (2024) 16 Cal.5th 1024, 1035 [dictionaries can be used to determine a word's meaning in the absence of a statutory definition].)

As to the second scenario, if Esmond and Miller's recusals were "withdrawal[s]" from the April 24, 2018 meeting, the assignment had to be "approved by at least *a majority of the required quorum* for that meeting." (§ 307, subd. (a)(8), italics added.) The bylaws authorized six directors, and all six positions were filled in April 2018. Thus, four directors were required to form a quorum for the April 24, 2018 meeting. (§ 307, subd. (a)(7) ["[a] majority of the authorized number of directors"].) Thus, for the assignment to obtain the board's approval, a majority of the required quorum needed to vote in favor of it, i.e., three out of four directors. (§ 307, subd. (a)(8).)

In sum, under either scenario, three directors at the April 24, 2018 meeting had to vote in favor of the assignment. Since only two directors voted for it, the assignment was not validly approved by the board under section 307, subdivision (a)(8).

The trial court reasoned that under section 307, subdivision (a)(8), "if a quorum of four is present and two members recuse themselves from voting, the remaining two members can still constitute a majority vote if they both agree on the matter being voted. This interpretation is supported by the general principle in corporate law that once a meeting is validly convened with a quorum, business can be transacted as long as the quorum is maintained, and any decisions made by the *majority of those voting* at the meeting are valid." (Italics added.)

The trial court provided no citation for its statement that a decision made by the majority of those *voting* is valid. Nor have the parties provided any authority to this effect. As explained above, section 307, subdivision (a)(8) states that board actions require approval by (1) "a majority of the directors *present* at a meeting" or (2) "a majority of the *required quorum* for that meeting" if directors withdraw from it. It is silent as to recusals or abstentions.

In construing a statute, "we may not broaden or narrow the scope of the provision by reading into it language that does not appear in it or reading out of it language that does. . . . ""[A] court . . . may not rewrite the statute to conform to an assumed intention which does not appear from its language.""" (*Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 545.) Section 307, subdivision (a)(8) does not state that board decisions can be approved by a majority of those *voting* on a measure if there are recusals or abstentions. Nor can we reasonably derive such a rule from the statute's text, which is entirely silent on this issue. Simply put, we cannot insert language into the statute that the Legislature did not include. (*Ibid.*)

The trial court cited the "CA Parliamentary Procedures" for the proposition that "when a member abstains from voting, they are still counted

21

for purposes of determining whether there is a quorum, but their abstention votes on the motion are treated as if they do not exist . . . . This means that while the abstaining member is considered present for the purpose of establishing a quorum, their non-vote does not count towards the majority needed to pass a motion."

The above citation to the "CA Parliamentary Procedures" appears to reference appendix G of the California Rules of Court, which contains parliamentary procedures for the Judicial Council of California (the Judicial Council rules). "These parliamentary procedures are a set of rules for conducting business at Judicial Council meetings." (Cal. Rules of Court, appen. G, ¶ I.) The Judicial Council rules explain that "[m]embers sometimes prefer to abstain from voting. Members who abstain are counted for purposes of determining whether there is a quorum, but the abstention votes on the motion are treated as if they do not exist. In other words, an abstention is not treated as either a 'yes' vote or a 'no' vote." (Cal. Rules of Court, appen. G, ¶ VII.B.)

To begin, the Judicial Council rules are unpersuasive. They are expressly intended to govern Judicial Council meetings. Neither party has explained why they should influence our interpretation of section 307, subdivision (a)(8), whose text is unambiguous.

Besides, even if we considered the Judicial Council rules, they do not support the trial court's interpretation of section 307, subdivision (a)(8). The Judicial Council rules state that "[w]hen a majority vote is needed to pass a motion, one vote more than 50 percent of those voting is required." (Cal. Rules of Court, appen. G, ¶ VII.A.) They then provide the following example: "Assume that 18 members are present and voting on a procedural motion that requires only a majority vote to pass . . . . If the vote is 10 to 8,

22

the motion passes. If the vote is 9 to 9, the motion fails. *If the vote is 9 to 8 with 1 abstention, the motion fails because 10 votes are required for the motion to pass (one vote more than 50 percent).* Once again, the abstention vote is counted only for the purpose of determining quorum, but on the actual vote on the motion, it is as if the abstention vote did not occur." (Cal. Rules of Court, appen. G, ¶ VII.C, italics added.)

Thus, under the Judicial Council rules, abstaining members do *not* reduce the number of votes needed for a majority. The required majority is still based on the number of members *present* at the meeting, not the number of members *voting*. If 18 members are present at a meeting and one member abstains from voting, a measure still needs to be approved by a majority of the 18 members present, i.e., 10 members. Put differently, if one member abstains, the required majority is *not* based on the 17 members that vote, which would only require nine affirmative votes to pass a motion.

As applied here, if Esmond and Miller's recusals were tantamount to abstentions, a majority of the four directors present at the April 24, 2018 meeting still needed to vote in favor of the assignment to obtain the board's approval. Only two voted for it. Since the assignment was not approved by a majority of the directors present at the meeting, it was not validly approved by the board. (§ 307, subd. (a)(8); cf. Cal. Rules of Court, appen. G, ¶ VII.C.)

The trial court also cited Code of Regulations, title 17, section 60006, which is a regulation governing the Air Resources Board. This regulation states, "The presence of a majority of the total appointed voting members of the state board shall constitute a quorum, and formal decisions shall be by vote of a majority of the quorum. No formal decision on any item shall be made in the absence of a quorum." (Cal. Code Regs., tit. 17, § 60006.)

This citation is also unpersuasive. It is unclear how a regulation governing the Air Resources Board has any bearing on our interpretation of section 307, subdivision (a)(8), which governs corporate board meetings. Further, nothing in this regulation addresses abstentions or recusals from voting. It only states that formal decisions require a "vote of a majority of the quorum." Here, only two of the four directors comprising the quorum voted in favor of the assignment. This was not a majority. Thus, even if this regulation is considered, it does not support the trial court's conclusion that the votes of the two directors were sufficient to obtain the board's approval.

In response, Barney makes several arguments that are either unpersuasive or cannot be addressed in this appeal. First, he contends the court did not abuse its discretion in weighing (1) the likelihood that Barney will prevail, and (2) the balance of harm between Barney and the Girns. (See *Hunter v. City of Whittier* (1989) 209 Cal.App.3d 588, 595 [discussing preliminary injunction standard].) But this argument ignores that the assignment's validity is fundamental to the preliminary injunction motion. Barney's alleged right to control LEI's defense of the Girns' cross-claims is rooted in the assignment. If it is invalid, Barney has no apparent right to control LEI's defense.

Next, Barney claims that even if the board did not properly approve the assignment at the April 24, 2018 meeting, it is still valid for a variety of other reasons, including that the Girns 1) lacked standing to challenge the assignment's enforceability; 2) judicially admitted the assignment is enforceable; 3) did not show that LEI had not ratified the assignment; 4) did not show that Esmond or Miller lacked actual or

24

ostensible authority to bind LEI to the assignment; and 5) did not show the assignment falls outside section 313.[7]

An appellate court "may affirm on any ground supported by the record [citation], including grounds not raised by the respondent, and even if the respondent does not file a brief [citations]. 'Thus, respondent can assert a new theory on appeal in order to establish that the judgment was correct on that theory unless doing so would unfairly prejudice appellant by depriving appellant of the opportunity to litigate an issue of fact.'" (*J.R. v. Electronic Arts Inc.* (2024) 98 Cal.App.5th 1107, 1115, fn. 2, italics omitted.)

The assignment may still be valid even if it was not properly approved by the board at the April 24, 2018 meeting. However, Barney's arguments involve factual issues that we cannot resolve under the current record. Since the insufficient votes argument was untimely made below, the parties were unable to provide evidence or brief any of Barney's counterarguments. Thus, we remand this case so the trial court can resolve these factual issues and decide whether the assignment remains valid despite not being properly approved by the board at the April 24, 2018 meeting. (See, e.g., *Farley v. Cory* (1978) 78 Cal.App.3d 583, 591 ["The record has not been developed to a point which permits the [appellate] court to fix the appropriate

---

[7] Section 313 provides that "[a]ny . . . contract . . . or other instrument in writing, and any assignment or endorsement thereof, executed or entered into between any corporation and any other person, when signed by the chairperson of the board, the president or any vice president and the secretary, any assistant secretary, the chief financial officer or any assistant treasurer of such corporation, is not invalidated as to the corporation by any lack of authority of the signing officers in the absence of actual knowledge on the part of the other person that the signing officers had no authority to execute the same."

relief. It is the trial court, before whom the facts will be developed, which must rule in the first instance"].)

Likewise, the parties argue whether directors with a conflict of interest are counted in determining a quorum. (See § 310, subd. (c).) We will not address this argument. It was not raised below, and additional facts are needed to determine whether any portion of section 310 applies here. The trial court can address any arguments under this statute on remand.

## DISPOSITION

The preliminary injunction order is reversed. On remand, the trial court shall address Barney's arguments concerning the assignment's validity that were not examined in this appeal. We leave it in the court's discretion to determine the permissible scope of briefing and evidence on remand. The Girns are entitled to their costs on this appeal.


MOORE, ACTING P. J.

WE CONCUR:


GOODING, J.


SCOTT, J.


26